# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

PATRICK DUNN and HOPE ELLY,

     Plaintiffs,

v.

BEAU RIVAGE RESORTS, LLC, and MGM RESORTS INTERNATIONAL,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION NO.**

1:17-cv-303-HSO-JCG

## PLAINTIFFS' COMPLAINT

## I.   INTRODUCTION

Plaintiffs, Patrick Dunn, and Hope Elly, file this Title III, ADA action, pursuant to 42 U.S.C. § 12181, et. seq. In Count One of the Complaint, Plaintiffs seek to enjoin the Defendants to remove architectural barriers. In Count Two, Plaintiffs seek to enjoin Defendants to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiffs seek to enjoin the Defendants' use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. In Count Four,

Plaintiffs seek to enjoin Defendants to remediate their website that fails to show the accessible features of Beau Rivage. In Count Five, Plaintiffs seek to enjoin Defendants' use of the reservation system in a manner that screens out the disabled from being able to make reservations for a hotel room with accessible features for the disabled. In Count Six, Plaintiffs seek to enjoin Defendants' failure to take the necessary steps to ensure Plaintiffs are not denied services, segregated or otherwise treated differently than other individuals who do not have disabilities through the use of the mobile software applications.

## II.    JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.   Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.   Venue is proper in this Court, the United States District Court for the Southern District of Mississippi, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Mississippi.

3. Plaintiff, Patrick Dunn, resides in Andalusia, Alabama. On March 8, 2001, Mr. Dunn was in an automobile accident that caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed, which has permanently confined him to a wheelchair and restricted his ability to use his hands, arms, and legs. Mr. Dunn is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

4. Plaintiff, Hope Elly, suffers from cerebrovascular accidents, which are more commonly known as strokes. These strokes have affected both her motor and sensory functions, which causes inactivity and/or paralysis of the muscles; therefore, maintaining balance, walking, and the ability to use her hands are extremely difficult. As a result of her disability, she relies on mobility aids for locomotion. The extent of Ms. Elly's physical problems limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all

of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Elly is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

5. Defendant, Beau Rivage Resorts, LLC, (hereinafter "Beau Rivage") is a corporation that is both registered to do business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief from the property records on the Harrison County GIS Internet Report, Beau Rivage Resorts, LLC, "owns" the real property and improvements located at 875 Beach Blvd, Biloxi, Mississippi 39530. 42 U.S.C. § 12182. Upon further information and belief, Beau Rivage Resorts, LLC, "operates" the establishment located at 875 Beach Blvd, Biloxi, Mississippi 39530, more commonly known as Beau Rivage Resort & Casino. Beau Rivage is a commercial facility in that the units are intended for nonresidential use and affect commerce. 42 U.S.C. § 12181

(2)(A). Moreover, the establishment features restaurants, a hotel, casino games, shopping, and other entertainment which qualifies as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

6. Defendant, MGM Resorts International, (hereinafter "MGM"), is a corporation that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific <u>in personam</u> jurisdiction. Upon information and belief, MGM Resorts International "owns" the public internet website beaurivage.com and "operates" the world-wide website services that are available to the public at Beau Rivage. 42 U.S.C. § 12182. Accordingly, MGM Resorts International's website beaurivage.com is a commercial facility in that its operations affect commerce. 42 U.S.C. § 12181 (2)(A). The website beaurivage.com is a place of public accommodation pursuant to 42 U.S.C. § 12181(7). Moreover, On July 26, 2010, the United States Department of Justice issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government

Entities and Public Accommodations.  75 Fed Reg. 43460.  The Department of Justice explained in the ANPRM that although the Department has been clear that the ADA applies to websites of public accommodations, inconsistent court decisions, differing standards for determining web accessibility, and repeated calls for Department action warranted further guidance.  Id. at 43464.  Through the ANPRM, the Department sought to explore what regulatory provisions it could propose to make clear to entities covered by the ADA of their obligations to make their websites accessible.

7.  Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it is a place of lodging offering guest rooms for stays that are short term in nature; a variety of restaurants for food and drink, retail items for purchase, and other entertainment activities to the public. Accordingly, it is covered by the ADA and must comply with the Act.

8.  Defendants' resort itself is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(a), which provides:

The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce:

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor.

In particular, the hotel rooms are a "place of lodging", pursuant to 28 C.F.R. § 36.104, which provides:

> *Place of public accommodation* means a facility operated by a private entity whose operations affect commerce and fall within at least one of the following categories –

> (1) Place of lodging, except for an establishment located within a facility that contains not more than five rooms for rent or hire and that actually is occupied by the proprietor of the establishment as the residence of the proprietor. For purposes of this part, a facility is a "place of lodging" if it is –

> (i) An inn, hotel, or motel; or

> (ii) A facility that –

(A) Provides guest rooms for sleeping for stays that primarily are short-term in nature (generally 30 days or less) where the occupant does not have the right to return to a specific room or unit after the conclusion of his or her stay; and

(B) Provides guest rooms under conditions and with amenities similar to a hotel, motel, or inn, including the following –

    (1) On- or off-site management and reservations service;

    (2) Rooms available on a walk-up or call-in basis;

    (3) Availability of housekeeping or linen service; and

    (4) Acceptance of reservations for a guest room type without guaranteeing a particular unit or room until check-in, and without a prior lease or security deposit.

**9.** Plaintiffs' stay at the resort establishes their conformity to the elements of 28 C.F.R. § 36.104, because the resort was rented to them for a short-term stay, (less than 30 days); Upon Plaintiffs' arrival at Beau Rivage, they were required to check

in at the front desk with an employee of Beau Rivage; Plaintiffs had the opportunity to have housekeeping services during their stay; Plaintiffs did not have the right to return to their specific room after they checked-out of their hotel room at the front desk; the services provided were similar to other hotels or motels in that there was onsite employees and a reservation system, as well as reservations accepted without guaranteeing a particular room until check –in and without a prior lease; and housekeeping or linen service was available.

10. All events giving rise to this lawsuit occurred in the Southern District of Mississippi and the Defendants are citizens thereof.

11. Plaintiff Patrick Dunn enjoys vacationing in Biloxi, Mississippi because he enjoys the different type of entertainment Biloxi offers as well as the nightlife. Mr. Dunn enjoys the outgoing social lifestyle whether it is playing casino games or enjoying the night life at the resorts that offer all sorts of social activities and entertainment. More specifically, Mr. Dunn enjoys Beau Rivage, which is the subject of this action. Mr. Dunn specifically and definitely intends to continue going to Beau

Rivage when he travels to Biloxi because he loves the live entertainment[1]. Mr. Dunn does not know exactly when he will go back to Beau Rivage because he has not planned out every trip nor every meal for the rest of his life. Such specific planning is not necessary to invoke the ADA. See, *e.g.* *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*"). Mr. Dunn definitely intends to return to Beau Rivage, however, not only to enjoy the nightlife, sleep, play casino games, drink, eat, and enjoy the entertainment and other activities, but also to see if Beau Rivage will do the repairs to become ADA compliant and will continue to do so in the future to ensure Defendants maintain their resort to accessibility standards. Mr. Dunn will continue to return even

---

[1] Mr. Dunn stays at the Beau Rivage because some of his favorite bands perform there in addition to other live entertainment. Mr. Dunn's most recent trip was to attend the Ron White performance.

after the repairs are made because Beau Rivage is a deep and diverse resort destination that creates experiences that engage, entertain and inspire that simply do not exist anywhere else.

12. Mr. Dunn planned a trip to Biloxi, Mississippi to go and enjoy the Mini-Vegas atmosphere playing casino games. Mr. Dunn enjoys the live events at Beau Rivage and has attended events on many occasions. On or around July 2017, Mr. Dunn went online to the Beau Rivage website, beaurivage.com, to determine if Beau Rivage would meet his accessibility needs while he was attending the Ron White event, but was unable to do so whatsoever, which is a failure by Defendants to properly maintain their website and reservation system in accordance with the ADA. As a result of Defendants' failure, Mr. Dunn was unable to determine any accessible features of the hotel suites and casino itself because Defendants do not identify and describe the accessible features in any form or fashion whatsoever other than the standard rooms. Nor was Mr. Dunn afforded the opportunity to make reservations online because Mr. Dunn was not able to determine any suites that are

accessible, whereas other individuals without disabilities are able to reserve non-accessible suites. Due to the lack of accessibility on Defendants' website and reservation system, Mr. Dunn made reservations, and despite not being afforded the same opportunity as an individual who does not require accessibility needs, made do with the unequal treatment since Ron White was performing at the theater. When Mr. Dunn arrived at Beau Rivage, the allegedly accessible parking spaces were not compliant in anyway. Mr. Dunn's attending aids had trouble assisting Mr. Dunn from the passenger seat of his car into his wheelchair because there were not any adjoining access aisles that were level surfaces. Once they were able to finally struggle through getting out of the vehicle, Mr. Dunn struggled to get into the elevator and maneuver inside of it because it was so small. Mr. Dunn finally got inside and was forced to use the check in counter at which point Mr. Dunn was frustrated because the check-in counter was so tall that from his wheelchair he communicated with the counter side wall because he could not see over it to interact with the Beau

Rivage employee. Mr. Dunn could neither independently complete the commercial transaction by swiping his own credit card, because the credit card machine was mounted on top of the utterly non-compliant counter nor could he sign anything because there was no writing surface available. All of which could have been avoided if Defendants' mobile app had been accessible. Because Mr. Dunn uses his voice recognition software and the assistive touch features since he has limited use of his hands, he can, therefore, independently make reservations, check in, etc. as a result of accessible mobile technology provided the universe. Mr. Dunn, out of his prior experiences at other resorts, communicated through the check-in counter wall with the front desk worker of Beau Rivage[2] to inquire again if there was an accessible room with an adjoining non-accessible room. Mr. Dunn was assured it was accessible, however, the allegedly accessible room was not accessible to Mr. Dunn. During Mr. Dunn's stay, he enjoyed playing the

---

[2] Mr. Dunn's experience when communicating with the employee at the check in counter was not in the same manner as other individuals without disabilities. Mr. Dunn felt as if he was talking to the wall rather than visually interacting with the employee who he was speaking to behind the desk.

casino games, however, he did not enjoy the Defendants' players card reader on the games, because Mr. Dunn was required to insert it into the machine in such a way that all the machines made it impossible for Mr. Dunn to grasp and retrieve his players card when he finished playing. Instead, Mr. Dunn was forced to ask a stranger for assistance to retrieve his card which made Mr. Dunn feel as if he was treated unfairly because people who are not disabled are able to retrieve their players card without seeking assistance. Mr. Dunn does not understand why Defendants did not consider him or other disabled individuals who have limited use of their hands when implementing the players card readers on the machines because disabled individuals enjoy casino games just like non-disabled enjoy the casino games. Throughout Mr. Dunn's visit, he went from the parking lot to the entranceways, from the parking lot to and throughout the hotel, including his rented hotel room, the services areas, bathrooms, shopping areas, pool area, spa and salon area, casinos, the Resorts common areas and its associated amenities, BR Prime, Terrace Café, Coast

Seafood & Brew, Jia, Stalla, The Buffet, Snacks, The Roasted Bean, Häagen-Dazs, Breeze Bar, Coast Nightclub, Eight75, paths of travel, recreational areas, and the fitness center. Mr. Dunn, accordingly, has standing as to all the areas he visited. During this vacation, he encountered barriers in the areas described above as well as barriers described more specifically throughout the Complaint. Mr. Dunn absolutely wants to return to Beau Rivage and Mr. Dunn will definitely do so in the near future, in particular to see if repairs are being made to achieve and maintain compliance, even after initial repairs are made.

13. Plaintiff Hope Elly vacations in Biloxi, Mississippi because she enjoys the relaxing beach environment as well as the entertainment Biloxi offers. Ms. Elly enjoys the laid-back beach environment and resorts that offer all sorts of activities and entertainment. More specifically, Ms. Elly enjoys Beau Rivage, which is the subject of this action. Ms. Elly specifically and definitely intends to continue going to Beau Rivage when she travels to Biloxi. Ms. Elly does not know exactly when she will

go back to Beau Rivage because she has not planned out every trip nor every meal for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, *e.g. Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Ms. Elly definitely intends to return to Beau Rivage, however, not only to sleep, play casino games, drink, eat, and enjoy the entertainment and other activities but also to see if Beau Rivage will do the repairs to become ADA compliant. Ms. Elly will continue to return even after the repairs are made because Beau Rivage is a deep and diverse resort destination that creates experiences that engage, entertain and inspire that simply do not exist anywhere else.

14. Ms. Elly and her best friend enjoy going on short vacations to Biloxi to enjoy the relaxing beach environment and the assortment of adult entertainment like casino games. Ms. Elly

recently went online to beaurivage.com to make reservations for a weekend get away with her best friend. During Ms. Elly's experience with making the travel plans, she tried to determine if Beau Rivage would meet her accessibility needs, but was unable to do so as a result of Defendants' failure to properly identify and describe the accessible features of the hotel rooms on the website. As a result of the discriminatory acts by Defendants, Ms. Elly further searched through the Beau Rivage website to determine if the hotel had any accessible features at all, or at the very least, assess whether the establishment would be large enough for her to make do since Defendants' website failed to identify any of Beau Rivage's accessible features. Her review of the Defendants' website was inconclusive because the website lacked sufficient information. Ultimately, Ms. Elly decided to go to the Beau Rivage  because of its variety of live entertainment and charming architecture and interior design scheme so she made reservations, and went there with her best friend. During Ms. Elly's visit she went from the parking lot to the entranceways, from the parking lot

to and throughout the hotel, including her rented hotel room, the services areas, bathrooms, pool area, casinos, paths of travel, common areas, recreational areas, and the fitness center. Ms. Elly accordingly, has standing as to all the areas she visited. During this vacation, she encountered barriers in the areas described above as well as barriers described more specifically throughout the Complaint. Ms. Elly wants to return to Beau Rivage, and Ms. Elly will do so in the near future, in particular to see if repairs are being made to achieve and maintain compliance, even after initial repairs are made.

15. Because of the barriers described below in paragraph 29, and throughout the Complaint, Plaintiffs have been denied full and equal enjoyment of the Defendants' premises on the basis of their disabilities.

16. Plaintiffs accordingly, have Article III standing to pursue this case because (1) they are disabled, pursuant to the statutory and regulatory definition; (2) the Defendants' hotel, casino and other entertainment complex is a place of public accommodation, pursuant to the statutory and regulatory

definition; (3) they have suffered a concrete and particularized injury by being denied access to Beau Rivage by architectural barriers, by being denied access by the Defendants' practices described throughout this Complaint, and by Defendants' denial of the use of Beau Rivage for their full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph 27.

### III.   PLAINTIFFS' CLAIMS

<u>ADA, Title III</u>

17. On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 <u>et.seq</u>. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

18. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it provides transient lodging, as described above and

defined by regulation; and it further offers a variety of restaurants for food and drink, retail items for purchase, and other entertainment activities to the public. Accordingly, it is covered by the ADA and must comply with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv)**
***(Architectural Barriers)***

**Defendants' Existing Facilities Are Subject to the 2010 ADA Design Standards for the Portions of the Facilities Addressed in This Complaint**

19. Plaintiffs are informed and believe based on publicly available information that the original Beau Rivage Resort & Casino located at 875 Beach Blvd, Biloxi, Mississippi 39530, was first constructed in 1999.

20. Plaintiffs are further informed and believe based on publicly available information that Beau Rivage Resort & Casino located at 875 Beach Blvd, Biloxi, Mississippi 39530 underwent re-construction and/or alterations in 2005 after Hurricane Katrina and re-opened for business on August 29, 2006. The estimated $550 million reconstruction and/or alterations to the

entire 3.2 million square foot resort include but are not limited to a redesigned casino, redesigning and enhancing all 1,740 guest rooms and suites, 11 world-class restaurants, four lounges and bars, 12 retail venues, a spa and salon, a tropical pool, a convention center, a golf course, and the Beau Rivage Theatre.

21. Additionally, Plaintiffs are informed and believe that from 2015 to 2016, Beau Rivage completed a multi-million-dollar renovation to improve the guest experience. The renovations include but are not limited to enhancements in the 85,000-square-foot casino including an upgraded High Limits salon with a brand new look, layout and design that blends Southern elegance and comfort through its exquisite furnishings and ample seating, eye-catching gas lamps lining its perimeter, a hanging light centerpiece that spans the entire length of the open and airy lounge, a private cashier, a fully-stocked private bar and an increase in games including 126 of the most popular slot machines and eight table games; an expanded smoke-free gaming area including new décor and 270 slot machines; and a

new, larger poker room on the southwest end of the casino including 16 action-packed tables with a variety of popular games like Texas Hold'em, 7-Card Stud, and Omaha High Low Split.

22. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the

building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

23. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified

to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not*

*comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards." Moreover, please note that 28 C.F.R. § 36.304(d), Appendix provides: "Elements that do not comply with the requirements for those elements in the 1991 Standards or that do not comply with the supplemental requirements (i.e., elements for which there are neither technical nor scoping specifications in the 1991 Standards), must be modified to the extent readily achievable" in accordance with the 2010 Standards.

24. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

## Plaintiffs' Concrete and Particularized Standing to Pursue an Injunction

25.   The Defendants have discriminated, and continue to discriminate, against Plaintiffs, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Beau Rivage  in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b).  Defendants' failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

26.   As described above, prior to the filing of this lawsuit, Plaintiffs were denied full and equal access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendants' facility. Plaintiffs' access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility

in violation of the ADA. Because of the foregoing, Plaintiffs have suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

27. Plaintiffs have definite plans to return to Beau Rivage in the future, as described in paragraphs 11-14. Plaintiffs will return to Beau Rivage within the next few months not only to stay, shop, eat, drink, and enjoy other entertainment, but also to see if Beau Rivage has repaired the barriers, and changed its practices and procedures. Plaintiffs will continue to do so in the near future and even when Beau Rivage is repaired. Also, and of vital importance, the barriers are not just created by construction issues; instead many of them are created by human activity, from the way management and workers at Beau Rivage use Beau Rivage's physical facilities. The barriers created by human activity will need to be reviewed forever, to be sure Defendants' management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendants, Plaintiffs will continue to encounter the architectural barriers, and the discriminatory policies,

practices, and procedures described herein and as a result, be discriminated against by Defendants on the basis of their disabilities. As persuasive authority and also as a matter of common sense, the Eleventh Circuit, held in _Houston v. Marod Supermarkets_, that when architectural barriers have not been remedied "_there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store_." Due to the definiteness of Plaintiffs' future plans to continue visiting the subject facility and their past patronage, there exists a genuine threat of imminent future injury, _Houston v. Marod, supra_. Plaintiffs' intent to return is plausible, as pleaded above. _Houston, supra_.

## Architectural Barriers

28. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

29. Plaintiffs have been throughout all the parking lot at Beau Rivage  and from the parking lot to the entrances, to and

throughout the retail areas, the retail areas themselves, from the entrances to and throughout the restrooms, the restrooms themselves; from the entrances to and throughout the dining areas, the dining areas themselves, the common areas including the hotel lobby, casinos, arcade, and fitness and spa area, the sales and service counters, throughout circulation paths and accessible routes, from the parking lot to and throughout the common areas including the retail and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Moreover, Defendants' facility located at 875 Beach Blvd., Biloxi, Mississippi 39530, more commonly known as "Beau Rivage ", violates the ADA in the hotel guest rooms, check-in and lobby area, parking lot, the entranceways, from the parking lot to and throughout the common areas and the retail service areas, bathrooms, paths of travel, common areas, and in particular but not limited to:

## PARKING AREAS

a. Beau Rivage provides parking spaces in the parking structure for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

    i. The purported accessible parking spaces in the parking structure have cross slopes and running slopes that are impermissibly too steep;

    ii. The purported accessible parking spaces fail to have an access aisle that connects to an accessible route to the entrance of Beau Rivage;

    iii. The parking spaces and their non-existing adjacent access aisles fail to be properly marked so as to be discouraged from parking in them;

    iv. The purported accessible parking spaces fail to be wide enough;

    v. The existing parking spaces fail to have ADA compliant adjacent access aisles;

**vi.** Beau Rivage fails to have and otherwise fails to evenly disburse the accessible parking spaces throughout the parking structure;

**vii.** There are no accessible parking spaces located at the shortest accessible route to the entrance;

**viii.** There are no ADA compliant parking spaces that provide the required designated ADA signage mounted at 60 inches minimum above the finished floor or ground surface;

**ix.** Beau Rivage fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

**x.** There is no signage displaying the international symbol of accessibility at any of the parking spaces;

**b.** Beau Rivage provides parking spaces in the parking structure for able-bodied individuals, but fails to provide any ADA van accessible parking spaces for non-able-bodied individuals who

drive mobility van which includes but is not limited to the following failures by Defendants:

i. There are no "van" accessible parking spaces that measure 132 inches wide with a 60-inch-wide adjacent access aisle, or alternatively measure 96 inches wide with a 96-inch-wide adjacent access aisle;

ii. There are no van accessible parking spaces with adjacent access aisles that connect to an accessible route to the entrance of Beau Rivage;

iii. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches minimum above the finished floor or ground surface;

iv. Beau Rivage fails to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

**v.** There are no van accessible parking spaces located at the shortest accessible route to the entrance;

**vi.** Beau Rivage fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

**c.** Beau Rivage provides a route from the parking lot leading to the entrances for able-bodied individuals, but fails to provide an ADA accessible route from the parking structure to the entrances for non-able-bodied individuals which including but is not limited to the following elements:

**i.** The walking surface on the purported accessible route from the non-compliant ADA parking spaces towards the entrance have running slopes that exceed the required change in surface level;

**ii.** There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other

element that is required to be readily accessible to and usable by individuals with disabilities;

iii. The walking surface on the accessible route from the parking structure to the casino has a running slope that exceeds the maximum allowed slope of 1:20 which prohibits individuals with disabilities from being afforded the opportunity to use the same circulation paths as non-disabled individuals;

iv. Beau Rivage fails to have an ADA accessible public entrance for disabled individuals to enter Beau Rivage from the parking deck;

## GUEST ROOMS

d. Beau Rivage provides hotel rooms for able bodied individuals but fails to provide ADA accessible hotel rooms for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Beau Rivage which includes but is not limited to the following failures of Defendants:

i. There is not the required amount of ADA accessible guest rooms that provide the required level of ADA compliant toilet and bathing facilities within the guest rooms;

ii. The allegedly accessible guest rooms fail to provide ADA compliant shower compartments which includes both the transfer type compartments and its associated accessible elements and roll-in shower compartments and its associated accessible elements;

iii. The existing shower compartments fail to provide grab bars that conform to the ADA Standards for Accessible Design which prohibits disabled individuals from being afforded the opportunity to independently use the compartment;

iv. The existing practice at Beau Rivage is to provide disabled individuals with portable bench seats for the showers rather than making its guest rooms

compliant with the ADA Standards for Accessible Design;

e. Beau Rivage provides an elevator for able-bodied individuals, but fails to provide an ADA accessible elevator for non-able-bodied individuals, which includes but is not limited to the following failures by Defendants:

   i. Beau Rivage requires guests to use the room key card to activate the elevator which has a discriminatory effect in practice of requiring individuals with disabilities from independently being afforded the opportunity to ride the elevator up to their room;

**ARCADE**

f. Beau Rivage provides an arcade gaming area for able bodied individuals but fails to provide that same experience by providing ADA accessible arcade games to non-able-bodied individuals, including but not limited to the following failures of Defendants:

    **i.** The arcade games do not provide the required clear floor or ground space for an individual with a disability to approach the game;

    **ii.** The cups that are used to hold tokens for the arcade are located at an impermissible height for individuals with disabilities to use the cup holders;

    **iii.** The current practice at Beau Rivage is to locate the token cups on top of the change machine which prohibits individuals with disabilities from being afforded the opportunity to use the token cups;

## OUTDOOR PATIO SEATING AREA BY ARCADE

**g.** Beau Rivage provides seating in the outdoor patio area for able-bodied individuals in the lower level outdoor dining area, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of the outdoor patio seating area;

**h.** Beau Rivage provides seating tables with umbrellas in the outdoor patio area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

    **ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;

    **iii.** The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

    **iv.** The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

     **v.**  There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

    **vi.**  Beau Rivage fails to maintain the accessible features at the seating tables in the outdoor patio area that are required to be readily accessible to and usable by individuals with disabilities;

## THE ROASTED BEAN

    **i.**  Beau Rivage provides an ordering counter in The Roasted Bean for able-bodied individuals but fails to afford non-able-bodied individuals the same experience by not providing an ADA accessible ordering counter including but not limited to the following failures of Defendants:

       **A.**  The ordering counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

**i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

**ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing ordering counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

**i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a

maximum of 36 inches above the finished

floor positioned for a forward approach;

iii. There is no clear floor space that is at least

30 inches wide x 48 inches long provided

underneath the 30 inches of clear counter

surface that is measured a maximum of 36

inches above the finished floor positioned

for a forward approach;

C.   There is no ADA accessible portion of the ordering

counter that extends the same depth as the non-

accessible portion of the ordering counter;

D.   Beau Rivage fails to maintain the accessible

features at the ordering counter in The Roasted

Bean that are required to be readily accessible to

and usable by individuals with disabilities;

j. Beau Rivage provides a pick-up counter in The Roasted Bean

for able-bodied individuals but fails to afford non-able-bodied

individuals the same experience by not providing an ADA

accessible pick-up counter including but not limited to the following failures of Defendants:

A.  The pick-up counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i.  There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B.  The existing pick-up counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the pick-up counter that extends the same depth as the non-accessible portion of the pick-up counter;

**D.**   Beau Rivage fails to maintain the accessible features at the pick-up counter in The Roasted Bean that are required to be readily accessible to and usable by individuals with disabilities;

**k.** Beau Rivage provides a self-service beverage condiment and supplies counter in The Roasted Bean for able-bodied individuals but fails to afford non-able-bodied individuals the same experience by not providing an ADA accessible self-service beverage condiment and supplies counter including but not limited to the following failures of Defendants:

**A.**   The self-service beverage condiment and supplies counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

**i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

      **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing self-service beverage condiment and supplies counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

      **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

      **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

      **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the self-service beverage condiment and supplies counter that extends the same depth as the non-accessible portion of the self-service beverage condiment and supplies counter;

**D.** The straws, beverage stirring sticks, flavoring spices, and other self-serving items are arranged so that individuals with disabilities cannot fully and independently access the items;

**E.** Beau Rivage's current practice on maintaining the straws, beverage stirring sticks, flavoring spices, and other self-serving items at the self-servicing beverage condiment and supplies counter in The

Roasted Bean stocked for guests segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters;

**F.**   Beau Rivage fails to maintain the accessible features at the self-service beverage condiment and supplies counter in The Roasted Bean that are required to be readily accessible to and usable by individuals with disabilities;

**l.**   Beau Rivage provides several types of seating in The Roasted Bean for able-bodied individuals but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of The Roasted Bean;

**m.** Beau Rivage provides bistro style seating tables and bistro style seating tables with umbrellas in The Roasted Bean for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or

accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i.   The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

ii.  The seating tables fails to provide at least five percent (5%) ADA accessible seating;

iii. The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

iv.  The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

v.   There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

      **vi.** Beau Rivage fails to maintain the accessible features at the seating tables in The Roasted Bean that are required to be readily accessible to and usable by individuals with disabilities;

## IMPULSE GIFT SHOP

**n.** Beau Rivage provides a gift shop for able bodied individuals but fails to provide that same experience by providing an ADA accessible gift shop to non-able-bodied individuals, including but not limited to the following failures of Defendants:

**o.** Beau Rivage provides an accessible route to and throughout the shopping retail aisles in the Impulse gift shop for able-bodied individuals but fails to provide an ADA accessible route to and throughout the retail shopping aisle in the gift shop for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Beau Rivage Impulse Gift Shop, including but not limited to the following elements:

i. Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the accessible route which prohibits individuals with disabilities to have the same shopping experience as individuals without disabilities;

ii. Beau Rivage Impulse gift shop locates its merchandise display tables and shelves within the clear floor or ground space of the accessible route and consequently obstructs the required clear floor space on the accessible route, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver throughout the gift shop;

iii. Beau Rivage Impulse gift shop fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the retail store shopping

aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

iv. Beau Rivage Impulse gift shop has ineffective policies, practices, or procedures that ensures the accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

v. Beau Rivage Impulse gift shop provides shelves displaying merchandise that is for sale to the public to able-bodied individuals, but fails to provide non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals

by failing to provide ADA accessible display shelves displaying merchandise that is for sale;

**p.** Beau Rivage Impulse gift shop provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

   **A.** The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

      **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

      **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide

provided   adjacent   to   the   36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.**    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.**    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36

inches above the finished floor positioned for a forward approach;

C.  There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

D.  There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E.  Beau Rivage Impulse gift shop provides a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

F.  The current practice at Beau Rivage Impulse gift shop is to place merchandise within the required clear counter surface;

**G.** Beau Rivage Impulse gift shop fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

## BELLINI

**q.** Bellini provides a check-out counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**A.** The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

**i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

  **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

  **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

  **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

  **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided

underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C.  There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

D.  There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E.  Bellini provides a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

F.  Bellini locates merchandise within the counter surface and consequently obstructs the required

clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the sales/service counter;

G. Bellini locates merchandise display tables within the clear floor space at the sales/service counter and consequently obstructs the required clear floor space at the sales/service counter, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use and access the sales/service counter;

H. Bellini fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

r. Bellini provides dressing rooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service,

facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

ii. There is no informational signage directing disabled individuals to the accessible dressing room;

iii. There is no signage displaying the International Symbol of Accessibility indicating an interior space within the dressing room as ADA accessible;

iv. Bellini fails to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

**v.** There is not at least one ADA accessible dressing room that provides the required maneuvering clearance at the dressing room door;

**vi.** There is not at least one ADA accessible dressing room that provides a bench with a back support and/or is affixed to the wall;

**vii.** The dressing room bench fails to provide the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

**viii.** There is not at least one dressing room bench that meets the minimum required length of 42 inches;

**ix.** There is not at least one ADA accessible dressing room that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

**x.** There is not at least one ADA accessible dressing room that has a bench that is 17 inches minimum and 19 inches maximum above the finished floor;

**xi.** There is not at least one ADA accessible dressing room in each cluster that has the required t-shaped turning space which includes but is not limited to not providing the required 30x48 inches of clear floor space beyond the arc of the door swing;

**xii.** There is not at least one existing ADA accessible dressing room that provides the required perpendicular clear floor space at the door to exit the dressing room;

**xiii.** The clothing hooks exceed the maximum allowed height of 48 inches above the finished floor;

**xiv.** Bellini fails to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

## SNACKS AREA IN CASINO

**s.** Beau Rivage provides an ordering counter in the Snacks area in the casino for able-bodied individuals but fails to afford

non-able-bodied individuals the same experience by not providing an ADA accessible ordering counter including but not limited to the following failures of Defendants:

    **A.** The ordering counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

        **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

    **B.** The existing ordering counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the ordering counter that extends the same depth as the non-accessible portion of the ordering counter;

**D.** Beau Rivage fails to maintain the accessible features at the ordering counter in the Snacks area in the casino that are required to be readily accessible to and usable by individuals with disabilities;

**t.** Beau Rivage provides a pick-up counter in the Snacks area in the casino for able-bodied individuals but fails to afford non-able-bodied individuals the same experience by not providing an ADA accessible pick-up counter including but not limited to the following failures of Defendants:

**A.** The pick-up counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

**i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

**ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide

provided   adjacent   to   the   36-inch

minimum length of counter;

**B.** The existing pick-up counter fails to provide a

minimum of 30 inches of clear counter surface for

individuals with disabilities to be able to make a

forward approach to the counter;

    **i.** There is not 30 inches of clear counter

surface that is measured a maximum of 36

inches above the finished floor positioned

for a forward approach;

    **ii.** There is no knee and toe clearance

provided under the 30 inches of clear

counter   surface   that   is   measured   a

maximum of 36 inches above the finished

floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least

30 inches wide x 48 inches long provided

underneath the 30 inches of clear counter

surface that is measured a maximum of 36

inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the pick-up counter that extends the same depth as the non-accessible portion of the pick-up counter;

D. Beau Rivage fails to maintain the accessible features at the pick-up counter in the Snack area in the casino that are required to be readily accessible to and usable by individuals with disabilities;

u. Beau Rivage provides a self-service condiment and supplies counter in the Snack area in the casino for able-bodied individuals but fails to afford non-able-bodied individuals the same experience by not providing an ADA accessible self-service condiment and supplies counter including but not limited to the following failures of Defendants:

A. The self-service condiment and supplies counter fails to provide a minimum of 36 inches of clear

counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing self-service condiment and supplies counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the self-service condiment and supplies counter that extends the same depth as the non-accessible portion of the self-service beverage condiment and supplies counter;

**D.** The straws, beverage stirring sticks, flavoring spices, and other self-serving items are arranged

so that individuals with disabilities cannot fully and independently access the items;

E. Beau Rivage's current practice on maintaining the straws, beverage stirring sticks, flavoring spices, and other self-serving items at the self-servicing condiment and supplies counter in the Snacks area in the casino stocked for guests segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters;

F. Beau Rivage fails to maintain the accessible features at the self-service condiment and supplies counter in the Snacks area in the casino that are required to be readily accessible to and usable by individuals with disabilities;

v. Beau Rivage provides seating in the Snacks area dining area for able-bodied individuals but fails to provide that same level of service to individuals without disabilities, which segregates

and relegates individuals with disabilities to an inferior benefit of Beau Rivage;

**w.** Beau Rivage provides dining tables and seating in the Snacks area dining area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

> **i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

> **ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;

> **iii.** The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

**iv.** The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

**v.** There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

**vi.** Beau Rivage fails to maintain the accessible features at seating tables that are required to be readily accessible to and usable by individuals with disabilities;

## HÄAGEN-DAZS

**x.** Beau Rivage provides seating for able-bodied individuals at Häagen-Dazs, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of Beau Rivage;

**y.** Beau Rivage provides dining tables and seating for able-bodied individuals at Häagen-Dazs, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

    **ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;

    **iii.** The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **iv.** The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

**v.** There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

**vi.** Beau Rivage fails to maintain the accessible features at the Häagen-Dazs seating tables that are required to be readily accessible to and usable by individuals with disabilities;

## POOL AREA

**z.** Beau Rivage provides a swimming pool for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit;

**i.** Beau Rivage fails to provide at least two accessible means of entry for an individual with a disability to be afforded the opportunity to get into the pool;

**ii.** The pool fails to provide a lift which prohibits a wheelchair dependent individual from accessing the pool and enjoying the Resort Amenities;

**iii.** Beau Rivage fails to provide 30x48 inches of required clear floor or ground space for a disabled individual to approach the accessible seating by the pool;

**aa.** Beau Rivage fails to provide an accessible route to the cabana seating area around the pool;

**bb.** Beau Rivage provides a Hot Tub for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit, including but not limited to the following elements:

      **i.** Beau Rivage fails to provide at least one accessible means of entry for an individual with a disability to be afforded the opportunity to get into the pool;

      **ii.** The hot tub fails to provide a lift or other mean of entry which prevents wheelchair dependent individuals from accessing the pool;

      **iii.** There is no accessible route leading up to the hot tub which denies individuals with disabilities the opportunity to experience the outdoor spa;

      **iv.** Beau Rivage fails to provide 30x48 inches of required clear floor or ground space for a disabled individual to approach the accessible seating by the pool;

**cc.** Beau Rivage provides a lounge seating area by the ocean for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without

disabilities which segregates and relegates individuals with disabilities to an inferior benefit, including but not limited to the following failures of Defendants:

i. Beau Rivage fails to provide at least five percent (5%) lounge seating by the ocean that conforms to the ADA Standards for Accessible Design;

ii. There is no ADA accessible lounge seating by the ocean that conforms to the standards for accessible design in all of the elements that are required to be readily accessible to and usable by individuals with disabilities;

iii. Beau Rivage fails to provide lounge seating by the ocean that is 20 inches deep minimum and 24 inches deep maximum;

iv. There is not at least one lounge seat by the ocean that is 17 inches minimum and 19 inches maximum above the finished floor;

**v.** There is not 36 inches of clear floor or ground space around the lounge seating by the ocean for a wheelchair user to be able to approach and transfer onto the seating;

**vi.** Beau Rivage positions and arranges the lounge seating by the ocean in a way that makes it nearly impossible for disabled individuals to use the seating which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lounge seating by the pool;

**dd.** Beau Rivage provides an accessible route to the lounge seating area by the ocean for able-bodied individuals, but fails to provide an ADA accessible route to the lounge seating area by the ocean for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at Beau Rivage;

**ee.** Beau Rivage provides an accessible route to the lounge seating area by the ocean for able-bodied individuals, but fails to provide an ADA accessible route to the lounge seating area by the ocean for individuals with disabilities and therefore, fails to afford individuals with disabilities the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The walking surface has a change in surface level that exceeds 1:20 which fails to comply with the standards for accessible design;

    **ii.** The existing ramping on the accessible route fails to have a level landing at the top and bottom of the ramp;

**ff.** Beau Rivage provides a Pool Bar & Café for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or

accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit, including but not limited to the following failures of Defendants:

gg.    Beau Rivage provides an accessible route to the Pool Bar & Café for able-bodied individuals, but fails to provide an ADA accessible route to the lounge seating area by the ocean for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at Beau Rivage;

hh.    Beau Rivage provides an accessible route to the Pool Bar & Café for able-bodied individuals, but fails to provide an ADA accessible route to the lounge seating area by the ocean for individuals with disabilities and therefore, fails to afford individuals with disabilities the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to

that afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    i. The walking surface has a change in surface level that exceeds 1:20 which fails to comply with the standards for accessible design;

    ii. The existing ramping on the accessible route fails to have a level landing at the top and bottom of the ramp;

ii. Beau Rivage provides several types of seating for able-bodied individuals in the Pool Bar & Café area, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of the Pool Bar & Café;

jj. Beau Rivage provides a bar for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without

disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

    **ii.** The bar fails to provide at least five percent (5%) ADA accessible seating;

    **iii.** The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **iv.** The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **v.** There is not a 30-inch-wide minimum clear counter surface available for an individual with a disability to be afforded the opportunity to approach the counter surface;

**vi.** Beau Rivage fails to maintain the accessible features at bar counter that are required to be readily accessible to and usable by individuals with disabilities;

**kk.** Beau Rivage provides dining tables in the elevated seating area behind the Pool Bar for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

**ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;

iii.  The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

iv.  The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

v.  There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vi.  Beau Rivage fails to maintain the accessible features at the seating tables in the elevated seating area behind the Pool Bar that are required to be readily accessible to and usable by individuals with disabilities;

ll.  Beau Rivage provides a men's restroom in the pool area for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or

accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit, including but not limited to the following failures of Defendants:

    i.  The main doorway to enter the men's restroom fails to provide the required clear floor space for a mobility impaired individual to maneuver into the restroom, out of the restroom, and make the turn in the passing space to access the other elements within the to enter and/or exit the women's restroom;

**mm.**  Beau Rivage provides a wheelchair accessible toilet compartment furthest from the restroom entrance for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to

individuals without disabilities, which includes but is not limited to the following failures of Defendants:

     **i.** There is not at least one ADA accessible wheelchair accessible toilet compartment that measures 56 inches deep and 60 inches wide and arranged so that the toilet compartment door is arranged to open furthest from the water closet;

     **ii.** The toilet compartment door is not self-closing;

     **iii.** The toilet compartment door fails to have door pulls located on both sides;

     **iv.** The door operating hardware on the toilet compartment requires the use of tight grasping, twisting, and/or pinching of the wrist;

     **v.** There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a water closet that measures a maximum of 16-18 inches from the side wall;

vi. There is not at least one ADA accessible wheelchair accessible toilet compartment that provide a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

vii. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a rear wall grab bar measured 36 inches long and located 24 inches on the openside of the toilet compartment and 12 inches on the closed side of the toilet compartment;

viii. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a side wall grab bar measuring 33-36 inches above the finished floor;

ix. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a rear wall grab bar measuring 33-36 inches above the finished floor;

    **x.** The toilet compartment fails to measure the required depth of 59 inches;

    **xi.** The coat hook measures 67 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

**nn.** Beau Rivage provides urinals for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** There is not at least one urinal with the top surface of the rim measured a maximum of 17 inches above the finished floor;

    **ii.** Beau Rivage provides urinals for able bodied individuals, but fails to provide at least 1 ADA

accessible urinal with the required 36 inches of clear floor or ground space;

iii. The existing allegedly accessible urinal, that is not actually ADA accessible, is confined on all or part of three sides and therefore fails to provide the required 36 inches wide of clear floor space;

oo. Beau Rivage provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

ii. There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to approach the

lavatory and position in a forward approach to use the lavatory;

iii. There is not at least one ADA accessible lavatory that provides the required 30x48 inches of clear floor space;

iv. Beau Rivage locates trash cans under the lavatories and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lavatory sink;

v. The paper towel dispensers require the use of tight grasping, twisting, and/or pinching of the wrist which prohibits individuals with disabilities from being afforded the opportunity to dry their hands;

vi. The automatic faucets fail to provide the continuous flow of water for at least 10 seconds;

**vii.** The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

**viii.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

**pp.** Beau Rivage provides a women's restroom in the pool area for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit, including but not limited to the following failures of Defendants:

**i.** The main doorway to enter the women's restroom fails to provide the required clear floor space for a mobility impaired individual to maneuver into the restroom, out of the restroom, and make the turn in the passing space to access the other elements within the restroom;

**qq.**     Beau Rivage provides a wheelchair accessible toilet compartment furthest from the restroom entrance for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**i.** The toilet compartment door is not self-closing;

**ii.** The toilet compartment door fails to have door pulls located on both sides;

**iii.** The coat hook measures 69 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

**iv.** There is not at least one ADA accessible wheelchair accessible toilet compartment that provide a side wall grab bar measured 42 inches long located 12

inches maximum from the rear wall and extending 54 inches measured from the rear wall;

v. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a rear wall grab bar measured 36 inches long and located 24 inches on the openside of the toilet compartment and 12 inches on the closed side of the toilet compartment;

vi. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a side wall grab bar measuring 33-36 inches above the finished floor;

vii. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a rear wall grab bar measuring 33-36 inches above the finished floor;

rr.  Beau Rivage provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a

good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to approach the lavatory and position in a forward approach to use the lavatory;

    **ii.** There is not at least one ADA accessible lavatory that provides the required 30x48 inches of clear floor space;

    **iii.** Beau Rivage locates trash cans under the lavatories and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lavatory sink;

**iv.** The paper towel dispensers require the use of tight grasping, twisting, and/or pinching of the wrist which prohibits individuals with disabilities from being afforded the opportunity to dry their hands;

**v.** The automatic faucets fail to provide the continuous flow of water for at least 10 seconds;

**vi.** The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

## MEN'S RESTROOM BY CONVENTION CENTER

**ss.** Beau Rivage provides a wheelchair accessible toilet compartment furthest from the restroom entrance for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**i.** The toilet compartment door is not self-closing;

    **ii.** The toilet compartment door fails to have door pulls located on both sides;

    **iii.** The side wall grab bar fails to extend the required distance from the side wall of 54 inches;

    **iv.** The coat hook measures 66 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

    **v.** The toilet compartment door is configured in a way so that the door opening fails to be 4 inches maximum from the side wall or partition farthest from the water closet;

**tt.** Beau Rivage provides a wheelchair accessible toilet compartment closest to the restroom entrance for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without

disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The toilet compartment door is not self-closing;

    **ii.** The toilet compartment door fails to have door pulls located on both sides;

    **iii.** The toilet compartment measures 37 inches wide which fails to provide the required 60 inches of clear floor space around the water closet;

    **iv.** The rear wall grab bar fails to be 36 inches long and located so that 12 inches is provided on the closed side of the compartment and 24 inches provided on the open side of the toilet compartment;

    **v.** The side wall grab bar fails to extend the required distance from the side wall of 54 inches;

    **vi.** The top of the toilet seat on the water closet is measured 15 inches above the finished floor which fails to meet the required height of 17-19 inches above the finished floor;

**vii.** The coat hook measures 66 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

**uu.** Beau Rivage provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

**i.** There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

**ii.** There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to approach the

lavatory and position in a forward approach to use the lavatory;

    **iii.** The paper towel dispensers require the use of tight grasping, twisting, and/or pinching of the wrist which prohibits individuals with disabilities from being afforded the opportunity to dry their hands;

    **iv.** The automatic faucets fail to provide the continuous flow of water for at least 10 seconds;

    **v.** The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

    **vi.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

## WOMEN'S RESTROOM BY CONVENTION CENTER

**vv.** There is no signage displaying the International Symbol of Accessibility identifying the interior space within the restroom area as ADA accessible;

**ww.** The main doorway to enter the women's restroom fails to provide the required clear floor space for a mobility

impaired individual to maneuver into the restroom, out of the restroom, and make the turn in the passing space to access the other elements within the restroom;

xx. Beau Rivage provides a wheelchair accessible toilet compartment furthest from the restroom entrance for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

  i. There is not at least one ADA wheelchair accessible toilet compartment that measures 56 inches deep and 60 inches wide;

  ii. The toilet compartment door is not self-closing;

  iii. The toilet compartment door fails to have door pulls located on both sides;

iv. The coat hook measures 66 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

v. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a side wall grab bar measured 42 inches long, located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

vi. The toilet compartment measures 56 inches wide, which fails to meet the required width of 60 inches minimum;

vii. The toilet compartment measures 56 inches wide which fails to provide the required 60x56 inches of clear floor space around the water closet;

> > **viii.** Beau Rivage fails to maintain the accessible features within the wheelchair accessible toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

> **yy.** Beau Rivage provides two ambulatory accessible toilet compartments directly behind the lavatory wall for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

> > **i.** There is not at least one ADA ambulatory accessible toilet compartment that measures a minimum of 60 inches deep and a maximum of 35-37 inches wide;

> > **ii.** The toilet compartment door is not self-closing;

iii. The toilet compartment door fails to have door pulls on both sides;

iv. The coat hook measures 66 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

v. There is not at least one ADA ambulatory accessible toilet compartment that provides a side wall grab bar measured 42 inches long, located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

vi. The toilet compartment measures 34 inches wide, which fails to meet the required width of 35-37 inches;

vii. Beau Rivage locates a sign directly in front of the ambulatory accessible toilet compartment on the right nearest the wall and consequently obstructs the required clear floor space which has a

discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to enter and/or exit the ambulatory accessible toilet compartment to use the restroom;

viii. Beau Rivage fails to maintain the accessible features of the ambulatory accessible toilet compartments that are required to be readily accessible to and usable by individuals with disabilities;

zz. Beau Rivage provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to approach the

lavatory and position in a forward approach to use the lavatory;

ii. There is not at least one ADA accessible lavatory that provides the required 30x48 inches of clear floor space;

iii. Beau Rivage locates trash cans under the lavatories and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lavatory sink;

iv. The paper towel dispensers require the use of tight grasping, twisting, and/or pinching of the wrist which prohibits individuals with disabilities from being afforded the opportunity to dry their hands;

v. The automatic faucets fail to provide the continuous flow of water for at least 10 seconds;

      **vi.** The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

      **vii.** Beau Rivage fails to maintain the accessible features at the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

## MEN'S RESTROOM BY PARKING DECK

    **aaa.** Beau Rivage provides a wheelchair accessible toilet compartment furthest from the restroom entrance for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

      **i.** The toilet compartment door is not self-closing;

      **ii.** The toilet compartment door fails to have door pulls located on both sides;

iii. The side wall grab bar fails to extend the required distance from the side wall of 54 inches;

iv. The toilet compartment measures 55 inches deep which fails to meet the required depth of 56 inches;

v. The centerline of the water closet exceeds the maximum allowed distance from the side wall of 16-18 inches;

vi. The coat hook measures 66 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

bbb. Beau Rivage provides urinals for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals

without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** There is not at least one urinal with the top surface of the rim measured a maximum of 17 inches above the finished floor;

    **ii.** Beau Rivage provides urinals for able bodied individuals, but fails to provide at least 1 ADA accessible urinal with the required 36 inches of clear floor or ground space;

    **iii.** The existing allegedly accessible urinal, that is not actually ADA accessible, is confined on all or part of three sides and therefore fails to provide the required 36 inches wide of clear floor space;

**ccc.** Beau Rivage provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to

individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    i. There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

    ii. There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to approach the lavatory and position in a forward approach to use the lavatory;

    iii. The paper towel dispensers require the use of tight grasping, twisting, and/or pinching of the wrist which prohibits individuals with disabilities from being afforded the opportunity to dry their hands;

    iv. The automatic faucets fail to provide the continuous flow of water for at least 10 seconds;

**v.** The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

**vi.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

**vii.** Beau Rivage fails to maintain the accessible features at the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

## WOMEN'S RESTROOM BY PARKING DECK

**ddd.** There is no signage displaying the International Symbol of Accessibility identifying the interior space within the restroom area as ADA accessible;

**eee.** The main doorway to enter the women's restroom fails to provide the required clear floor space for a mobility impaired individual to maneuver into the restroom, out of the restroom, and make the turn in the passing space to access the other elements within the restroom;

**fff.**　　　Beau Rivage provides a wheelchair accessible toilet compartment furthest from the restroom entrance for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

　　　i. There is not at least one ADA wheelchair accessible toilet compartment that measures the required with of 60 inches minimum and the required depth of 56 inches minimum;

　　　ii. The toilet compartment door is not self-closing;

　　　iii. The toilet compartment door fails to have door pulls located on both sides;

　　　iv. The coat hook measures 65 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities

from being afforded the opportunity to use the
coat hook;

v. The centerline of the water closet fails to measure
the maximum allowed distance of 16-18 inches
from the side wall;

vi. The toilet compartment measures 55 inches deep,
which fails to meet the required depth of 56 inches
minimum;

vii. The toilet compartment measures 55 inches deep
which fails to provide the required 60x56 inches of
clear floor space around the water closet;

viii. Beau Rivage fails to maintain the accessible
features within the wheelchair accessible toilet
compartment that are required to be readily
accessible to and usable by individuals with
disabilities;

ggg. Beau Rivage provides an ambulatory accessible toilet
compartment for able-bodied individuals but fails to afford

non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    i. There is not at least one ADA ambulatory accessible toilet compartment that measures a minimum of 60 inches deep and a maximum of 35-37 inches wide;

    ii. The toilet compartment door is not self-closing;

    iii. The toilet compartment door fails to have door pulls located on both sides;

    iv. The coat hook measures 65 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

**v.** There is not at least one ADA ambulatory accessible toilet compartment that provides a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

**vi.** There is not at least one ADA ambulatory accessible toilet compartment that provides a rear wall grab bar measured 36 inches long and located 24 inches on the openside of the toilet compartment and 12 inches on the closed side of the toilet compartment;

**vii.** The top of the toilet seat on the water closet is measured 15 inches above the finished floor which fails to meet the required height of 17-19 inches above the finished floor;

**viii.** The toilet compartment measures 40 inches deep, which fails to meet the required depth of 60 inches minimum;

**ix.** The toilet compartment measures 55 inches deep, which exceeds the required width of 35-37 inches maximum;

**x.** Beau Rivage fails to maintain the accessible features of the ambulatory accessible toilet compartment that are required to be readily accessible to and usable by disabled individuals;

**hhh.** Beau Rivage provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**i.** There is not at least one ADA accessible lavatory that provides the required 30x48 inches of clear floor space;

**ii.** Beau Rivage locates trash cans under the lavatories and consequently obstructs the required

clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lavatory sink;

iii. There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to approach the lavatory and position in a forward approach to use the lavatory;

iv. The paper towel dispensers require the use of tight grasping, twisting, and/or pinching of the wrist which prohibits individuals with disabilities from being afforded the opportunity to dry their hands;

v. The automatic faucets fail to provide the continuous flow of water for at least 10 seconds;

vi. The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

**vii.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

**viii.** The hand sanitizer dispenser by the baby changing table exceeds the maximum allowed height of 48 inches above the finished floor and prohibits disabled individuals from being able to use the hand sanitizer;

**ix.** Beau Rivage fails to maintain the accessible features of the lavatory that are required to be readily accessible to and usable by disabled individuals;

## MEN'S RESTROOM BY POKER AREA

**iii.** Beau Rivage provides a wheelchair accessible toilet compartment furthest from the restroom entrance for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded

to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The toilet compartment door is not self-closing;

ii. The toilet compartment door fails to have door pulls located on both sides;

iii. The door operating hardware on the toilet compartment requires the use of tight grasping, twisting, and/or pinching of the wrist;

iv. The centerline of the water closet exceeds the maximum allowed distance from the side wall of 16-18 inches;

v. The side wall grab bar fails to extend the required distance from the side wall of 54 inches;

vi. The side wall grab bar fails to measure 33-36 inches above the finished floor;

vii. The rear wall grab bar fails to measure 33-36 inches above the finished floor;

viii. The toilet compartment measures 58 inches deep which fails to meet the required depth of 59 inches;

ix. The coat hook measures 66 inches above the finished floor which prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

x. Beau Rivage fails to maintain the accessible features within the wheelchair accessible toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

jjj. Beau Rivage provides urinals for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    i. There is not at least one urinal with the top surface of the rim measured a maximum of 17 inches above the finished floor;

    ii. Beau Rivage provides urinals for able bodied individuals, but fails to provide at least 1 ADA accessible urinal with the required 36 inches of clear floor or ground space;

    iii. The existing allegedly accessible urinal, that is not actually ADA accessible, is confined on all or part of three sides and therefore fails to provide the required 36 inches wide of clear floor space;

    iv. Beau Rivage fails to maintain the accessible features of the urinals that are required to be readily accessible to and usable by individuals with disabilities;

**kkk.** Beau Rivage provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or

accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

ii. There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to approach the lavatory and position in a forward approach to use the lavatory;

iii. There is not at least one ADA accessible lavatory that provides the required 30x48 inches of clear floor space;

iv. Beau Rivage locates trash cans under the lavatories and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from

the full and equal opportunity to use the lavatory sink;

v. The paper towel dispensers require the use of tight grasping, twisting, and/or pinching of the wrist which prohibits individuals with disabilities from being afforded the opportunity to dry their hands;

vi. The automatic faucets fail to provide the continuous flow of water for at least 10 seconds;

vii. The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

viii. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

ix. Beau Rivage fails to maintain the accessible features of the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

## WOMEN'S RESTROOM BY POKER AREA

**lll.**　　There is no signage displaying the International Symbol of Accessibility identifying the interior space within the restroom area as ADA accessible;

**mmm.**　　The main doorway to enter the women's restroom fails to provide the required clear floor space for a mobility impaired individual to maneuver into the restroom, out of the restroom, and make the turn in the passing space to access the other elements within the restroom;

**nnn.**　　Beau Rivage provides a wheelchair accessible toilet compartment furthest from the restroom entrance for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

　　　　**i.** The coat hook measures 66 inches above the finished floor which prohibits individuals with

disabilities from being afforded the opportunity to use the coat hook;

ii. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

iii. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a rear wall grab bar measured 36 inches long and located 24 inches on the openside of the toilet compartment and 12 inches on the closed side of the toilet compartment;

iv. Beau Rivage fails to maintain the accessible features within the wheelchair accessible toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

**ooo.**    Beau Rivage provides an ambulatory accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

  **i.** There is not at least one ADA ambulatory accessible toilet compartment that measures 60 inches deep and 35-37 inches wide maximum;

  **ii.** The toilet compartment door is not self-closing;

  **iii.** The toilet compartment door fails to have door pulls located on both sides;

  **iv.** The coat hook measures 66 inches above the finished floor which prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

**v.** The toilet compartment measures 54 inches deep, which fails to meet the required depth of 60 inches minimum;

**vi.** There is not at least one ADA ambulatory accessible toilet compartment that provides a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

**vii.** There is not at least one ADA ambulatory accessible toilet compartment that provides a rear wall grab bar measured 36 inches long and located 24 inches on the openside of the toilet compartment and 12 inches on the closed side of the toilet compartment;

**viii.** The toilet seat cover dispenser measures 55 inches, which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits disabled individuals from being able to fully and

equally use the ambulatory accessible toilet compartment;

ix. Beau Rivage fails to maintain the accessible features within the ambulatory accessible toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

ppp. Beau Rivage provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to approach the lavatory and position in a forward approach to use the lavatory;

ii. There is not at least one ADA accessible lavatory that provides the required 30x48 inches of clear floor space;

iii. Beau Rivage locates trash cans under the lavatories and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lavatory sink;

iv. The paper towel dispensers require the use of tight grasping, twisting, and/or pinching of the wrist which prohibits individuals with disabilities from being afforded the opportunity to dry their hands;

v. The automatic faucets fail to provide the continuous flow of water for at least 10 seconds;

vi. The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

**vii.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

**viii.** Beau Rivage fails to maintain the accessible features of the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

## MEN'S RESTROOM BY THEATER

**qqq.** The restroom entrance door fails to provide the required perpendicular clear floor space for an individual with a disability to be afforded the opportunity to maneuver into and out of the restroom;

**rrr.** Beau Rivage provides a wheelchair accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

i. The toilet compartment door is not self-closing;

ii. The toilet compartment door fails to have door pulls located on both sides;

iii. The existing toilet compartment fails to measure the required width of 60 inches wide;

iv. The center line of the water closet fails to measure the required distance of 16-18 inches from the side wall;

v. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

vi. The highest operable part on the toilet seat cover dispenser exceeds the maximum allowed height for an obstructed reach;

vii. The coat hook exceeds the maximum allowed height of 48 inches above the finished floor;

viii. Beau Rivage fails to maintain the accessible features within the toilet compartment that are

required to be readily accessible to and usable by individuals with disabilities;

sss.    Beau Rivage provides urinals for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements in the toilet compartment furthest from the restroom entrance:

    i. There is not at least one urinal with a rim that measures a maximum of 17 inches above the finished floor and 13.5 inches deep minimum measured from the outer face of the urinal rim;

    ii. The urinal is confined on all or part of three sides and therefore the width fails to meet the required 36 inches;

ttt.    Beau Rivage provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals

the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

i.   There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

ii.   There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to position for a forward approach;

iii.   The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

iv.   The clear floor space serving the paper towel dispenser is obstructed by the large trash can;

v.   The current practice at Beau Rivage is to locate the trash can in a way that prohibits disabled individuals

from being afforded the opportunity to approach the paper towel dispenser;

## WOMEN'S RESTROOM BY THEATER

**uuu.** The main doorway to enter the women's restroom fails to provide the required clear floor space for a mobility impaired individual to maneuver into the restroom, out of the restroom, and make the turn in the passing space to access the other elements within the restroom;

**vvv.** Beau Rivage provides a wheelchair accessible toilet compartment furthest from the restroom entrance for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The toilet compartment door is not self-closing;

ii. The toilet compartment door fails to have door pulls located on both sides;

iii. The toilet paper dispenser is not properly located on both sides;

iv. The coat hook measures 66 inches above the finished floor which prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

v. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

vi. There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a rear wall grab bar measured 36 inches long and located 24 inches on the openside of the toilet compartment and 12 inches on the closed side of the toilet compartment;

**vii.** Beau Rivage fails to maintain the accessible features within the wheelchair accessible toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

**www.** Beau Rivage provides three ambulatory accessible toilet compartments for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**A.** The first ambulatory accessible stall fails to conform to the ADA Standards for Accessible Design including but not limited to the following elements:

**i.** There is not at least one ADA ambulatory accessible toilet compartment that

measures 60 inches deep and 35-37 inches wide maximum;

**ii.**    The toilet compartment door is not self-closing;

**iii.**    The toilet compartment door fails to have door pulls located on both sides;

**iv.**    The coat hook measures 64 inches above the finished floor which prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

**v.**    The toilet compartment measures 59 inches deep, which fails to meet the required depth of 60 inches minimum;

**vi.**    The toilet compartment measures 33 inches wide, which fails to meet the required width of 35 inches minimum and 37 inches maximum;

**vii.** There is not at least one ADA ambulatory accessible toilet compartment that provides a water closet that measures a maximum of 17-19 inches from the side wall;

**viii.** There is not at least one ADA ambulatory accessible toilet compartment that provides a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

**ix.** There is not at least one ADA ambulatory accessible toilet compartment that provides a rear wall grab bar measured 36 inches long and located 24 inches on the openside of the toilet compartment and 12 inches on the closed side of the toilet compartment;

    **x.**    The top of the toilet seat on the water closet is measured 14 inches above the finished floor which fails to meet the required height of 17-19 inches above the finished floor;

**B.**  The second to last ambulatory accessible stall fails to conform to the ADA Standards for Accessible Design including but not limited to the following elements:

    **i.**    There is not at least one ADA ambulatory accessible toilet compartment that measures 60 inches deep and 35-37 inches wide maximum;

    **ii.**    The toilet compartment door is not self-closing;

    **iii.**    The toilet compartment door fails to have door pulls located on both sides;

iv.   The coat hook measures 64 inches above the finished floor which prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

v.   The toilet compartment measures 56 inches deep, which fails to meet the required depth of 60 inches minimum;

vi.   The toilet compartment measures 32 inches wide, which fails to meet the required width of 35 inches minimum and 37 inches maximum;

vii.   There is not at least one ADA ambulatory accessible toilet compartment that provides a water closet that measures a maximum of 17-19 inches from the side wall;

viii.   There is not at least one ADA ambulatory accessible toilet compartment that

provides a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

ix. There is not at least one ADA ambulatory accessible toilet compartment that provides a rear wall grab bar measured 36 inches long and located 24 inches on the openside of the toilet compartment and 12 inches on the closed side of the toilet compartment;

x. The top of the toilet seat on the water closet is measured 15 inches above the finished floor which fails to meet the required height of 17-19 inches above the finished floor;

C. The last ambulatory accessible stall fails to conform to the ADA Standards for Accessible

Design including but not limited to the following elements:

    **i.**    There is not at least one ADA ambulatory accessible toilet compartment that measures 60 inches deep and 35-37 inches wide maximum;

    **ii.**    The toilet compartment door is not self-closing;

    **iii.**    The toilet compartment door fails to have door pulls located on both sides;

    **iv.**    The coat hook measures 64 inches above the finished floor which prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

    **v.**    The toilet compartment measures 56 inches deep, which fails to meet the required depth of 60 inches minimum;

**vi.**   The toilet compartment measures 33 inches wide, which fails to meet the required width of 35 inches minimum and 37 inches maximum;

**vii.**   There is not at least one ADA ambulatory accessible toilet compartment that provides a water closet that measures a maximum of 17-19 inches from the side wall;

**viii.**   There is not at least one ADA ambulatory accessible toilet compartment that provides a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

**ix.**   There is not at least one ADA ambulatory accessible toilet compartment that provides a rear wall grab bar measured 36 inches long and located 24 inches on the

openside of the toilet compartment and 12 inches on the closed side of the toilet compartment;

 **x.** The top of the toilet seat on the water closet is measured 14 inches above the finished floor which fails to meet the required height of 17-19 inches above the finished floor;

 **xi.** The toilet seat cover dispenser measures 53 inches, which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits disabled individuals from being able to fully and equally use the ambulatory accessible toilet compartment;

**xxx.** Beau Rivage fails to maintain the accessible features within the ambulatory accessible toilet compartments that are required to be readily accessible to and usable by individuals with disabilities;

yyy.  Beau Rivage provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

   i. There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to approach the lavatory and position in a forward approach to use the lavatory;

   ii. There is not at least one ADA accessible lavatory that provides the required 30x48 inches of clear floor space;

   iii. Beau Rivage locates trash cans under the lavatories and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from

the full and equal opportunity to use the lavatory sink;

iv. The paper towel dispensers require the use of tight grasping, twisting, and/or pinching of the wrist which prohibits individuals with disabilities from being afforded the opportunity to dry their hands;

v. The automatic faucets fail to provide the continuous flow of water for at least 10 seconds;

vi. The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

vii. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

viii. Beau Rivage fails to maintain the accessible features of the lavatory that are required to be readily accessible to and usable by disabled individuals;

## CASINO AREA

**zzz.**    Beau Rivage provides players club cards for able bodied individuals to enjoy rewards and other benefits at the casino games but fails to provide that same level of service to disabled individuals which includes but is not limited to the following failures of Defendants:

    **i.**  The players club card machine requires the use of tight grasping, twisting, and pinching of the wrist;

**aaaa.**    Beau Rivage provides casino games for able bodied individuals but fails to provide that same experience by providing ADA accessible arcade games to non-able-bodied individuals, including but not limited to the following elements:

    **i.** The casino games do not provide the required clear floor or ground space for an individual with a disability to approach the game;

**bbbb.**    Beau Rivage provides cashier counters for able-bodied individuals but fails to afford non-able-bodied individuals

the same experience by not providing an ADA accessible counter including but not limited to the following elements:

**A.** The cashier counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing cashier counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.**    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.**    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.**    There is no ADA accessible portion of the cashier counter that extends the same depth as the non-accessible portion of the cashier counter;

**D.**   Beau Rivage fails to maintain the accessible features at the cashier counter that are required to be readily accessible to and usable by individuals with disabilities;

**cccc.**   Beau Rivage provides the Breeze Bar area in the casino for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of the Breeze Bar area in the casino;

**dddd.**   Beau Rivage provides several types of seating for able-bodied individuals in the Breeze Bar area, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of the Breeze Bar area;

eeee.    Beau Rivage provides a bar in the Breeze Bar area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

   i.    The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

   ii.   The bar fails to provide at least five percent (5%) ADA accessible seating;

   iii.  The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

   iv.   The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

     **v.** There is not a 30-inch-wide minimum clear counter surface available for an individual with a disability to be afforded the opportunity to approach the counter surface;

     **vi.** Beau Rivage locates casino games on the inaccessible bar counter and consequently denies disabled individuals the opportunity to sit at the bar and play the games which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the casino games on the bar counter;

     **vii.** Beau Rivage fails to maintain the accessible features at the bar counter in the Breeze Bar area that are required to be readily accessible to and usable by individuals with disabilities;

**ffff.** Beau Rivage provides standard seating tables in the Breeze Bar area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to

participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

ii. The seating tables fails to provide at least five percent (5%) ADA accessible seating;

iii. The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

iv. The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

v. There is not a 30-inch-wide minimum clear table surface available for an individual with a

disability to be afforded the opportunity to approach the table surface;

vi. Beau Rivage fails to maintain the accessible features at the seating tables in the Breeze Bar area that are required to be readily accessible to and usable by individuals with disabilities;

gggg.  Beau Rivage provides lounge seating in the Breeze Bar area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following failures of Defendants:

i. There is not at least five percent (5%) ADA accessible lounge seating;

ii. There is no ADA accessible lounge seating that conforms to the standards for accessible design in all of the elements that are required to be readily

accessible to and usable by individuals with disabilities;

iii. There is not 36 inches of clear floor or ground space at the lounge seating for a wheelchair user to be able to approach and transfer onto the seating;

iv. Beau Rivage positions and arranges the lounge seating in the Breeze Bar area in a way that makes it nearly impossible for disabled individuals to use the seating which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lounge seating in the Breeze Bar area;

v. Beau Rivage fails to maintain the accessible features of the lounge seating in the Breeze Bar area that are required to be readily accessible to and usable by individuals with disabilities;

**hhhh.** Beau Rivage provides the Eight75 bar area in the casino for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of the Eight75 bar area in the casino;

**iiii.** Beau Rivage provides several types of seating for able-bodied individuals in the Eight75 bar area, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of the Eight75 bar area;

**jjjj.** Beau Rivage provides a bar in the Eight75 bar area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage,

or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. Beau Rivage does not provide any ADA accessible seating at the bar;

ii. The top surface of the restaurant bar exceeds the maximum allowed height of 34 inches above the finished floor;

iii. The bar area fails to provide five percent (5%) ADA seating;

iv. The bar counter fails to provide the required knee and toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

v. Beau Rivage provides two types of seating tables for able-bodied individuals in the bar area (bar seating and lounge seating), but fail to provide that same level of service to individuals without disabilities which

segregates and relegates individuals with disabilities to an inferior benefit of Beau Rivage;

**vi.** Beau Rivage fails to maintain the accessible features at the bar service counter;

**kkkk.** Beau Rivage provides tables for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

**i.** There are no seating tables that measure the required 28-34 inches above the finished floor;

**ii.** Beau Rivage fails to provide at least 5% ADA accessible seating tables;

**iii.** The seating tables fail to provide the required clear floor space for a forward approach;

**iv.** The seating tables fails to provide the required knee clearance, which prevents an individual with a disability from being able to approach the seating tables;

**v.** The seating tables fails to provide the required toe clearance, which prevents an individual with a disability from being able to approach the seating tables;

**llll.** Beau Rivage provides lounge seating in the Eight75 bar area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following failures of Defendants:

**i.** There is not at least five percent (5%) ADA accessible lounge seating;

ii.  There is no ADA accessible lounge seating that conforms to the standards for accessible design in all of the elements that are required to be readily accessible to and usable by individuals with disabilities;

iii. There is not 36 inches of clear floor or ground space at the lounge seating for a wheelchair user to be able to approach and transfer onto the lounge seating;

iv.  Beau Rivage positions and arranges the lounge seating in the Eight75 bar area in a way that makes it nearly impossible for disabled individuals to use the seating which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lounge seating in the Eight75 bar area;

v.   Beau Rivage fails to maintain the accessible features of the lounge seating in the Eight75 bar area that are required to be readily accessible to and usable by individuals with disabilities;

**mmmm.** Beau Rivage provides an Life Rewards Players Club area in the casino for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of the Breeze Bar area in the casino;

**nnnn.** Beau Rivage provides an MLife Rewards Players Club service counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **A.** The MLife Rewards Players Club service counter fails to provide a minimum of 36 inches of clear

counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i.  There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii.  There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.**  The existing MLife Rewards Players Club service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.**  There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

      **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

      **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the MLife Rewards Players Club service counter that extends the same depth as the non-accessible portion of the counter;

**D.** Beau Rivage fails to maintain the accessible features at the MLife Rewards Players Club service counter that are required to be readily

accessible to and usable by individuals with disabilities;

**oooo.** Beau Rivage provides a High Limits area in the casino for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of the High Limits area in the casino;

**pppp.** Beau Rivage provides several types of seating for able-bodied individuals in the High Limits area, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of the High Limits area;

**qqqq.** Beau Rivage provides a bar in the High Limits area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or

benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i.  The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

ii.  The bar fails to provide at least five percent (5%) ADA accessible seating;

iii.  The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

iv.  The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

v.  There is not a 30-inch-wide minimum clear counter surface available for an individual with a

disability to be afforded the opportunity to approach the counter surface;

**vi.** Beau Rivage fails to maintain the accessible features at the bar in the High Limits area that are required to be readily accessible to and usable by individuals with disabilities;

**rrrr.** Beau Rivage provides lounge seating in the High Limits area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following failures of Defendants:

**i.** There is not at least five percent (5%) ADA accessible lounge seating;

**ii.** There is no ADA accessible lounge seating that conforms to the standards for accessible design in all of the elements that are required to be readily

accessible to and usable by individuals with disabilities;

iii. There is not 36 inches of clear floor or ground space at the lounge seating for a wheelchair user to be able to approach and transfer onto the seating;

iv. Beau Rivage positions and arranges the lounge seating in the High Limits area in a way that makes it nearly impossible for disabled individuals to use the seating which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lounge seating in the High Limits area;

v. Beau Rivage fails to maintain the accessible features of the lounge seating in the High Limits area that are required to be readily accessible to and usable by individuals with disabilities;

**ssss.**    Beau Rivage provides a Smoke Free Slots area in the casino for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of the Smoke Free Slots area in the casino;

**tttt.**    Beau Rivage provides lounge seating in the Smoke Free Slots area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following failures of Defendants:

　　　　**i.** There is not at least five percent (5%) ADA accessible lounge seating;

ii. There is no ADA accessible lounge seating that conforms to the standards for accessible design in all of the elements that are required to be readily accessible to and usable by individuals with disabilities;

iii. There is not 36 inches of clear floor or ground space at the lounge seating for a wheelchair user to be able to approach and transfer onto the seating;

iv. Beau Rivage positions and arranges the lounge seating in the Smoke Free Slots area in a way that makes it nearly impossible for disabled individuals to use the seating which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lounge seating in the Smoke Free Slots area;

v. Beau Rivage fails to maintain the accessible features of the lounge seating in the Smoke Free

Slots area that are required to be readily accessible to and usable by individuals with disabilities;

## **FITNESS CENTER**

**uuuu.** Beau Rivage provides a fitness center for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

   **i.** Beau Rivage fails to provide at least one type of each exercise machine with the clear floor or ground surface for a wheelchair user to be able to approach the equipment;

   **ii.** Beau Rivage fails to maintain an adjacent accessible route to the exercise machines clear floor space which prohibits individuals with disabilities

from being afforded the opportunity to maneuver in the fitness room;

**iii.** Beau Rivage fails to maintain the accessible features within the fitness center that are required to be readily accessible to and usable by individuals with disabilities;

## CHECK-IN LOBBY AREA

**vvvv.** Beau Rivage provides a check-in counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures by Defendants:

**A.** The existing counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.**    There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.**    There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.**  The existing counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.**    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.**    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a

maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the counter that extends the same depth as the non-accessible portion of the counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** The credit card payment terminal is located on a non-accessible portion of the existing counter which prohibits individuals with disabilities from being afforded the opportunity to independently

transact business in the same manner as non-disabled individuals;

**F.** Beau Rivage to maintain the accessible features at the check-in counter that are required to be readily accessible to and usable by individuals with disabilities;

## SPA & SALON

**wwww.** Beau Rivage provides sales/service counters at the Spa for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

**A.** The sales/service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches

above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Beau Rivage Spa & Salon fails to maintain the accessible features at the sales/service counter

that are required to be readily accessible to and usable by individuals with disabilities;

**xxxx.**   Beau Rivage provides seating in the Spa area for able-bodied individuals to sit and relax while they wait for their spa experience, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

**i.** There is not at least five percent (5%) ADA accessible seating;

**ii.** The seating fails to meet the required height of 17-19 inches above the finished floor;

**iii.** There is no ADA accessible seating that conforms to the standards for accessible design in all of the elements that are required to be readily accessible to and usable by individuals with disabilities;

## THE BUFFET

**yyyy.**    Beau Rivage provides a food selection counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

   **A.**  The service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

   **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

   **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the service counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** Beau Rivage fails to maintain the accessible features at the service counter that are required to be readily accessible to and usable by individuals with disabilities;

**zzzz.** Beau Rivage provides a self-servicing condiment counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the same experience afforded to individuals without disabilities, including but not limited to the following elements:

**A.** The self-servicing condiment counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The self-servicing counters fail to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches

above the finished floor positioned for a forward approach;

   iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. The condiment items on the counters are arranged so that individuals with disabilities cannot fully an independently access the items;

D. Beau Rivage current practice on maintaining the condiment items stocked for customers segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters;

E. Beau Rivage fails to maintain the accessible features at the self-servicing condiment counters

that are required to be readily accessible to and usable by individuals with disabilities;

**aaaaa.** Beau Rivage provides several different style seating options for able bodied individuals to sit and dine while at The Buffet, but fails to provide that same level of service to individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of the dining area.

**bbbbb.** Beau Rivage provides standard tables and booth tables in The Buffet for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

  **i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

**ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;

**iii.** The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

**iv.** The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

**v.** There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

**vi.** Beau Rivage fails to maintain the accessible features at the seating tables in The Buffet that are required to be readily accessible to and usable by individuals with disabilities;

**BR PRIME**

ccccc.   Beau Rivage provides a hostess counter in the BR Prime entrance area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

   A.   The hostess counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

      i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

      ii.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided

adjacent to the 36-inch minimum length of the counter;

**B.** The existing hostess counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30-inches wide x 48-inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36

inches above the finished floor positioned for a forward approach;

    **C.** There is no ADA accessible portion of the hostess counter that extends the same depth as the non-accessible portion of the hostess counter;

    **D.** Beau Rivage fails to maintain the accessible features of the hostess counter in the BR Prime entrance area that are required to be readily accessible to and usable by individuals with disabilities;

**ddddd.** Beau Rivage provides several types of seating for able-bodied individuals in BR Prime Steakhouse, but fails to provide that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of BR Prime Steakhouse;

**eeeee.** Beau Rivage provides a bar for able-bodied individuals in BR Prime Steakhouse, but fails to afford non-able-bodied individuals the same opportunity to participate in or

benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i.   The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

ii.  The bar fails to provide at least five percent (5%) ADA accessible seating;

iii. The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

iv.  The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

v.   There is not a 30-inch-wide minimum clear counter surface available for an individual with a

disability to be afforded the opportunity to approach the counter surface;

    **vi.** Beau Rivage fails to maintain the accessible features at the BR Prime bar counter that are required to be readily accessible to and usable by individuals with disabilities;

**fffff.** Beau Rivage provides standard dining tables and hybrid booth tables in BR Prime for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

    **ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;

iii. The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

iv. The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

v. There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vi. Beau Rivage fails to maintain the accessible features at the seating tables in BR Prime that are required to be readily accessible to and usable by individuals with disabilities;

ggggg. Beau Rivage provides a women's restroom in BR Prime for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded

to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of BR Prime;

    **i.** Beau Rivage locates a sign at the BR Prime women's restroom entrance and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the women's restroom in BR Prime;

**hhhhh.** Beau Rivage provides a wheelchair accessible toilet room within the women's restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i.  The coat hook measures 60 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

ii.  The centerline of the water closet exceeds the maximum allowed distance of 16-18 inches from the side wall;

iii.  The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

iv.  There is not at least one ADA wheelchair accessible toilet room that provides a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

v.  Beau Rivage fails to maintain the accessible features within the toilet room in BR Prime that

are required to be readily accessible to and usable by individuals with disabilities;

iiiii. Beau Rivage provides a lavatory within the women's restroom in BR Prime for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

　i. The bottom reflecting surface of the mirror exceeds 40 inches maximum above the finished floor;

　ii. Beau Rivage locates a trash can at the lavatory sink and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lavatory sink;

    **iii.** Beau Rivage fails to maintain the accessible features of the lavatory in the BR Prime women's restroom that are required to be readily accessible to and usable by individuals with disabilities;

**jjjjj.** Beau Rivage provides a men's restroom in BR Prime for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of BR Prime;

    **i.** Beau Rivage locates a sign at the BR Prime men's restroom entrance and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the women's restroom in BR Prime;

**kkkkk.** Beau Rivage provides a men's restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

  i. The coat hook exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

  ii. The centerline of the water closet exceeds the maximum allowed distance of 16-18 inches from the side wall;

  iii. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

  iv. There is not at least one ADA wheelchair accessible toilet room that provides a side wall

grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

lllll.   Beau Rivage provides a lavatory within the men's restroom in BR Prime for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    i.   The bottom reflecting surface of the mirror exceeds 40 inches maximum above the finished floor;

    ii.   Beau Rivage locates a trash can at the lavatory sink and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lavatory sink;

iii. There is insufficient maneuvering clearance under the lavatory sink for a wheelchair individual to be afforded the opportunity to approach the lavatory.

iv. Beau Rivage fails to maintain the accessible features of the lavatory in the BR Prime men's restroom that are required to be readily accessible to and usable by individuals with disabilities;

## STALLA

mmmmm. Beau Rivage provides a hostess counter in the Stalla entrance area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The hostess counter fails to provide a minimum of 36 inches of clear counter surface for individuals

with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of the counter;

**B.** The existing hostess counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**iii.** There is no clear floor space that is at least 30-inches wide x 48-inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the hostess counter that extends the same depth as the non-accessible portion of the hostess counter;

**D.** Beau Rivage fails to maintain the accessible features of the hostess counter in the Stalla entrance area that are required to be readily accessible to and usable by individuals with disabilities;

**nnnnn.** Beau Rivage provides a waiting area inside Stalla area for able-bodied individuals, but fails to provide an ADA accessible waiting area for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Stalla restaurant;

**ooooo.** Beau Rivage provides chair seating in the Stalla waiting area for able-bodied individuals to sit and relax while waiting, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**i.** Beau Rivage fails to provide at least one accessible chair seat in the Stalla waiting area that conforms to the ADA Standards for Accessible Design;

ii.  There is not at least one accessible chair seat that is 20 inches deep minimum and 24 inches dep maximum;

iii.  There is not at least one accessible chair that is 17 inches minimum and 19 inches maximum above the finished floor;

iv.  There is not at least one accessible chair that is measured 42 inches long;

v.  There is not at least one accessible chair in the Stalla waiting area that provides back support and/or is affixed to the wall;

vi.  Beau Rivage fails to maintain the accessible features of the chair seating in the Stalla waiting area that are required to be readily accessible to and usable by individuals with disabilities;

ppppp.  Beau Rivage provides several types of seating for able-bodied individuals in Stalla, but fails to provide that same level of service to individuals with disabilities, which

segregates and relegates individuals with disabilities to an inferior benefit of Stalla;

**qqqqq.** Beau Rivage provides a bar for able-bodied individuals in Stalla, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

  i. The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

  ii. The bar fails to provide at least five percent (5%) ADA accessible seating;

  iii. The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **iv.** The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **v.** There is not a 30-inch-wide minimum clear counter surface available for an individual with a disability to be afforded the opportunity to approach the counter surface;

    **vi.** Beau Rivage fails to maintain the accessible features at the Stalla bar counter that are required to be readily accessible to and usable by individuals with disabilities;

**rrrrr.** Beau Rivage provides standard dining tables and hybrid booth tables in Stalla for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

ii. The seating tables fails to provide at least five percent (5%) ADA accessible seating;

iii. The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

iv. The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the tables;

v. There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vi. Beau Rivage fails to maintain the accessible features at the seating tables in Stalla that are

required to be readily accessible to and usable by individuals with disabilities;

sssss.   Beau Rivage provides a women's restroom in Stalla for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of Stalla;

　　i.  There is no signage displaying the International Symbol of Accessibility identifying the interior space within the restroom as ADA accessible;

　　ii.  The hallway in the restroom area fails to provide the required clear floor space for a mobility impaired individual to maneuver into the restroom, out of the restroom, and make the turn in the passing space to access the other elements within the restroom;

ttttt.   Beau Rivage provides a women's toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

   i.   Beau Rivage fails to provide at least one ADA wheelchair accessible toilet room in Stalla that conforms to the ADA Standards for Accessible Design;

   ii.   The force required to operate the women's toilet room door exceeds five pounds maximum;

   iii.   The toilet room door overlaps into the required clear floor space at the fixtures within the toilet room;

   iv.   The coat hook measures 58 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and

prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

v. There is not at least one ADA wheelchair accessible toilet room that provides a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

vi. The centerline of the water closet exceeds the maximum allowed distance of 16-18 inches from the side wall;

vii. Beau Rivage locates the trash can in the Stalla women's toilet room beside the water closet and consequently obstructs the required clear floor space at the water closet which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the toilet room;

viii.  The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

ix.  The lavatory sink is located within the required 60 inches x 56 inches of clear floor or ground space around the water closet, which prohibits disabled individuals from being able to transfer onto the water closet;

x.  The lavatory sink exceeds the maximum allowed height of 34 inches above the finished floor;

xi.  The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

xii.  The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

xiii.  Beau Rivage fails to maintain the accessible features within the Stalla women's toilet room that are required to be readily accessible to and usable by individuals with disabilities;

**uuuuu.** Beau Rivage provides a men's restroom in Stalla for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of Stalla;

**vvvvv.** Beau Rivage provides a men's toilet room in Stalla for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

> **i.** The lavatory sink obstructs the required maneuvering clearance around the water closet;

> **ii.** There is insufficient maneuvering clearance at the restroom door when exiting the men's restroom;

    **iii.** The coot hook exceeds the maximum allowed height for the obstructed reach range;

    **iv.** The center line of the water closet exceeds 16-18 inches from the side wall;

    **v.** The lavatory is surrounded on all or part of 3 sides and fails to provide the required 36 inches of clear floor space;

    **vi.** The paper towel dispenser requires the use of tight grasping twisting and/or pinching of the wrist;

## TERRACE CAFÉ

**wwwww.** Beau Rivage provides an accessible route to the Terrace Café for able-bodied individuals, but fails to provide an ADA accessible route to the Terrace Café for individuals with disabilities and therefore fails to afford individuals with disabilities the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other

individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** Beau Rivage provides an accessible route to the Terrace Café for able-bodied individuals but fails to provide an ADA accessible route to Terrace Café for individuals with disabilities which prohibits disabled individuals from being able to have the same dining experiences as individuals without disabilities;

    **ii.** There is no ADA accessible route to the Terrace Café that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, ramps, ramp landings, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

**iii.** Beau Rivage fails to provide at least one accessible ramp to the Terrace Café that conforms to the ADA Standards for Accessible Design;

**iv.** The purported accessible ramp leading to the Terrace Café is impermissibly too steep;

**xxxxx.** Beau Rivage provides a hostess counter in the Terrace Café entrance area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**A.** The hostess counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of the counter;

**B.** The existing hostess counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches

above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30-inches wide x 48-inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the hostess counter that extends the same depth as the non-accessible portion of the hostess counter;

**D.** Beau Rivage fails to maintain the accessible features of the Terrace Café hostess counter that are required to be readily accessible to and usable by individuals with disabilities;

**yyyyy.** Beau Rivage provides a waiting area inside Terrace Café for able-bodied individuals, but fails to provide an ADA accessible waiting area for individuals with disabilities which prohibits individuals with disabilities from the full

and equal opportunity to access the goods and services at Terrace Café;

zzzzz.  Beau Rivage provides bench seating in the Terrace Café waiting area for able-bodied individuals to sit and relax while waiting, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

  i.  The bench seating fails to provide the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

  ii.  There is not at least one ADA accessible bench in the Terrace Café waiting area that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

      **iii.** There is not at least one bench in the Terrace Café waiting area that meets the minimum required length of 42 inches;

      **iv.** There is not at least one bench in the Terrace Café waiting area that measures 17 inches minimum and 19 inches maximum above the finished floor;

      **v.** Beau Rivage fails to provide at least one accessible seating bench in Terrace Café that conforms to the ADA Standards for Accessible Design;

**aaaaaa.** Beau Rivage provides several types of seating in Terrace Café for able-bodied individuals, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of Terrace Café;

**bbbbbb.** Beau Rivage provides standard dining tables and booth tables in Terrace Café for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that

experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    i. The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

    ii. The seating tables fails to provide at least five percent (5%) ADA accessible seating;

    iii. The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the tables and enjoy their meal;

    iv. The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the tables and enjoy their meal;

    v. There is not a 30-inch-wide minimum clear table surface available for an individual with a

disability to be afforded the opportunity to approach the table surface;

**vi.** Beau Rivage fails to maintain the accessible features at the seating tables in Terrace Café that are required to be readily accessible to and usable by individuals with disabilities;

**cccccc.** Beau Rivage provides a women's restroom in Terrace Café for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of Terrace Café;

**i.** There is no signage displaying the International Symbol of Accessibility identifying the interior space within the restroom as ADA accessible;

**ii.** The entrance to the women's restroom fails to provide the required clear floor space for a mobility

impaired individual to maneuver into the restroom, out of the restroom, and make the turn in the passing space to access the other elements within the restroom;

**dddddd.** Beau Rivage provides a wheelchair accessible toilet compartment within the women's restroom in Terrace Café for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The toilet compartment door is not self-closing;

    **ii.** The toilet compartment door fails to have door pulls located on both sides;

    **iii.** The coat hook measures 65 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and

prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

iv. There is not at least one ADA wheelchair accessible toilet compartment that measures 56 inches minimum from the rear wall and 60 inches minimum from the side wall;

v. There is not at least one ADA wheelchair accessible toilet compartment that provides a side wall grab bar measured 42 inches long, located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

vi. The side wall grab bar fails to measure 33-36 inches above the finished floor;

vii. There is not at least one ADA wheelchair accessible toilet compartment that provides a rear wall grab bar measured 36 inches long and located 24 inches on the openside of the toilet compartment and 12 inches on the closed side of the toilet compartment;

viii. The rear wall grab bar fails to measure 33-36 inches above the finished floor;

ix. The centerline of the water closet exceeds the maximum allowed distance from the side wall of 16-18 inches;

x. The top of the toilet seat on the water closet is measured 14 inches above the finished floor which fails to meet the required height of 17-19 inches above the finished floor;

xi. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

xii. Beau Rivage fails to maintain the accessible features within the toilet compartment in the Terrace Café women's restroom that are required to be readily accessible to and usable by individuals with disabilities;

**eeeeee.** Beau Rivage provides a lavatory in the women's restroom in Terrace Café for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

     **i.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

     **ii.** The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

     **iii.** The automatic faucet fails to provide the continuous flow of water for at least 10 seconds;

     **iv.** Beau Rivage locates trash cans under the lavatory and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lavatory sink;

v. Beau Rivage fails to maintain the accessible features at the lavatory in the Terrace Café women's restroom that are required to be readily accessible to and usable by individuals with disabilities;

ffffff. Beau Rivage provides a men's restroom in Terrace Café for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of Terrace Café;

gggggg. Beau Rivage provides a wheelchair accessible toilet room within the men's restroom in Terrace Café for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals

without disabilities, which includes but is not limited to the following failures of Defendants:

i.  The toilet compartment door is not self-closing;

ii.  The toilet compartment door fails to have door pulls located on both sides;

iii.  The coat hook measures 65 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the coat hook;

iv.  There is not at least one ADA wheelchair accessible toilet compartment that measures 56 inches minimum from the rear wall and 60 inches minimum from the side wall;

v.  There is not at least one ADA wheelchair accessible toilet compartment that provides a side wall grab bar measured 42 inches long, located 12

inches maximum from the rear wall and extending
54 inches measured from the rear wall;

vi. The side wall grab bar fails to measure 33-36
inches above the finished floor;

vii. There is not at least one ADA wheelchair
accessible toilet compartment that provides a rear
wall grab bar measured 36 inches long and located
24 inches on the openside of the toilet
compartment and 12 inches on the closed side of
the toilet compartment;

viii. The rear wall grab bar fails to measure 33-36
inches above the finished floor;

ix. The centerline of the water closet exceeds the
maximum allowed distance from the side wall of
16-18 inches;

x. The top of the toilet seat on the water closet is
measured 14 inches above the finished floor which

fails to meet the required height of 17-19 inches above the finished floor;

xi. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

xii. Beau Rivage fails to maintain the accessible features within the toilet compartment in the Terrace Café women's restroom that are required to be readily accessible to and usable by individuals with disabilities;

hhhhhh. Beau Rivage provides a lavatory in the men's restroom in Terrace Café for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

    **ii.** The lavatory sink fails to provide the required knee and toe maneuvering clearance under the lavatory;

    **iii.** The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

    **iv.** The automatic faucet fails to provide the continuous flow of water for at least 10 seconds;

    **v.** Beau Rivage locates trash cans under the lavatory and consequently obstructs the required clear floor space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lavatory sink;

**30.** To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

**31.** Plaintiffs have been obligated to retain the undersigned

counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

32. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs' injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendants to modify their policies, practices, and procedures, to make reasonable accommodations to individuals with disabilities.

## COUNT TWO
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*

## ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

33. Plaintiffs re-allege paragraphs 1-32 above.

34. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of

disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

35. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§

36.308, 36.203).

36. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

37. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

38. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

39. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any

policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit explained this clear statutory mandate in _Rendon v. Valleycrest Prod., Ltd._ 294 F.3d 1279, (11th Cir. 2002):

> "_A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendants entity's goods, services and privileges._"

## Defendants' Failed Practices and Lack of Policies Are

**Discriminatory**

40. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

41. Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

42. As detailed below, Defendants have failed to make reasonable modifications in their policies, practices, and procedures that are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendants denied services, segregated or otherwise

treated Plaintiffs differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendants have discriminated against Plaintiffs. Defendants will continue that discrimination forever until enjoined as Plaintiffs request. The discrimination is described more particularly in the following paragraphs.

43. Defendants either have no policies, practices, and procedures to remove architectural barriers or else they do not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendants have failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

44. Defendants' use of their facilities, and their practices at the facilities, literally creates barriers and in so doing denies the Plaintiffs the full and equal enjoyment of the facilities. Those practices include:

    a)    Defendants fail to provide ADA accessible parking with connecting accessible routes to the establishment from their parking structure, which means that Plaintiffs are

forced to depend on assistance from a third party to get into Beau Rivage, whereas non-disabled conveniently access the establishment from the parking structures;

b)   Defendants make their hotel check in counters inaccessible for use by individuals with disabilities by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, or appropriately staff the allegedly accessible check in counter, which means Plaintiffs cannot fully and equally use the counters to check into their hotel rooms/suites at Beau Rivage in the same way the non-disabled do, because the non-disabled have a plethora of counters that readily available to use to check-in to their rooms, check-out, and every other service Beau Rivage provides at the registration counters;

c)   Defendants makes their players club cards ("MLife rewards") and its associated benefits inaccessible for use by the disabled, which means that that Plaintiffs are required to seek assistance to use the players card at the

casino games or otherwise be outright excluded from the benefits of the players club, whereas non-disabled individuals do not need to seek assistance to use the players club cards at the games so that they enjoy earning rewards that convert to slot credits, earning benefits at the players tables, earning valuable rewards dollars that can be redeemed at the resort, receive monthly deals for the Beau Rivage & Resort in the mail, and among other benefits.

d)    Defendants fail to provide an accessible MLife Rewards counter to the disabled which means Plaintiffs cannot fully and equally use the MLife Rewards counter to discuss member services, benefits, and other associated elements of MLife Rewards in the same way the non-disabled do, because the non-disabled have counters they can use independently;

e)    Defendants makes sales/service counters throughout their establishment inaccessible for use by the handicapped by failing to provide either a parallel or a

forward approach to the counters with the required clear counter surface, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business throughout Beau Rivage in the same way the non-disabled do, because the non-disabled have counters they can use independently to check-in to their rooms, check-out, and order food and drink items;

**f)**   Defendants fail to provide an accessible route that connects the resort to all of the spaces and elements of the outdoor pool area that are required to be readily accessible to and usable by disabled individuals, so that Plaintiffs are entirely prohibited from accessing each and every space and element of the outdoor pool area, and are therefore prohibited from enjoying the same benefits and experiences in the same way as the non-disabled get to enjoy;

**g)**   Defendants' seating arrangement and their failure to provide accessible lounge seating by the ocean are designed, positioned, and oriented in a way that

excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are  outright excluded from the "opportunity" to sit and lounge by the ocean to enjoy the view or soak up the sun or any other relaxing benefit from anywhere else that able-bodied individuals are able to sit and enjoy the outdoor bar area;

h)   Defendants fail to provide an accessible route to the lounge seating by the ocean in the pool area that is readily accessible to and usable by disabled individuals, so that Plaintiffs are entirely prohibited from accessing each and every space and element of the lounge seating by the ocean in the pool area, and are therefore prohibited from enjoying the same benefits and experiences the non-disabled get to enjoy;

i)   Defendants fail to provide an accessible dressing room to Plaintiffs and other disabled individuals inside the

Bellini store, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do without requiring assistance;

j)  Defendants make the seating in the dressing room at Bellini inaccessible for use by the disabled by failing to provide a bench that conforms to the ADA Standards for Accessible Design, which means Plaintiffs are denied the opportunity to fully and equally use the bench to sit and try on clothes before purchasing, whereas non-disabled individuals are able to utilize all of the benefits of the dressing room;

k)  Defendants fail to provide signage in the Bellini dressing room area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible dressing room, which means that Beau Rivage does not even claim to have an ADA accessible dressing room and that Plaintiffs are forced to use trial and error to decide which dressing room they can use, if they can use any at all, unlike the

non-disabled who can freely use any dressing room they would like;

l)   Defendants make sales/service counters inside Bellini inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business in the same way the non-disabled do, because the non-disabled have counters they can use independently;

m)   Defendants fail to provide an accessible route that connects the entrance of Impulse to all of the spaces, elements, and retail aisles that are required to be readily accessible to and usable by disabled individuals, so that Plaintiffs are entirely prohibited from accessing each and every space and element of the Impulse retail store, and is therefore prohibited from enjoying the same benefits and experiences in the same way as the

non-disabled get to enjoy;

n)    Defendants make sales/service counters inside Impulse
gift shop inaccessible for use by the disabled by failing
to provide either a parallel or a forward approach to the
counters with the required clear counter surface at the
required accessible height, which means Plaintiffs
cannot fully and equally use the sales/service counters
to transact business in the same way the non-disabled
do, because the non-disabled have counters they can use
independently;

o)    Defendants' seating arrangement and their failure to
provide accessible seating in the outdoor patio area
adjacent to the arcade and Roasted Bean are designed,
positioned, and oriented in a way that excludes or
otherwise segregates disabled individuals to an
experience that is not the same experience that is
afforded to able-bodied individuals, because unlike able
bodied individuals, disabled individuals are  outright
excluded from the "opportunity" to sit, relax and to enjoy

the outdoors or any other relaxing benefit from anywhere else that able-bodied individuals are able to sit and enjoy;

p)   Point of sale machines at the check-out counters throughout the establishment are located so as to be inaccessible, which denies Plaintiffs the ability to equally use those machines as the non-disabled, who can independently use the point of sale machines to pay for their purchases, though Plaintiffs cannot;

q)   Defendants fail to provide maneuvering clearance and clear floor space in almost every way possible so that Plaintiffs cannot travel and move throughout the establishment on the same paths of travel that the non-disabled people use;

r)   Defendants make their toilet facilities throughout the establishment inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restrooms so that Plaintiffs are afforded the opportunity to independently use the restroom, or clean

up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restrooms;

s)   Defendants make their pool area inaccessible for use by the disabled by failing to maintain any ADA accessible features whatsoever, so that Plaintiffs are completely excluded from being able to lounge in the chairs, swim in the pool, sit at the hot tub, among other services in the pool area, whereas non-disabled individuals are able to independently enjoy and use the pool area to swim, lounge in the chairs, sit in the hot tub, and use the cabanas;

t)   Defendants make the Pool Bar & Café area and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to approach the bar counter to order a drink, or sit at the bar to socialize, or sit at the café area tables, or any other benefits that able-bodied individuals receive at the Pool Bar & Café;

u)    Defendants fail to provide an accessible route to the Pool Bar and Café that is readily accessible to and usable by disabled individuals, so that Plaintiffs are entirely prohibited from accessing each and every space and element of the Pool Bar & Café, and are therefore prohibited from enjoying the same benefits and experiences the non-disabled get to enjoy;

v)    Defendants make BR Prime and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to sit at the various types of seating and enjoy an upscale dinner and atmosphere, approach the bar counter to order a drink, sit at the bar to socialize, use the restrooms, or any other benefits that able-bodied individuals receive at BR Prime;

w)    Defendants make Stalla and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to sit at the various types of seating and

enjoy their dinner, approach the bar counter to order a drink, sit at the bar to socialize, use the restrooms, or any other benefits that able-bodied individuals receive at Stalla;

x)   Defendants make Terrace Café and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to sit at the various types of seating and enjoy their meals, use the restrooms, or any other benefits that able-bodied individuals receive at Terrace Café;

y)   Defendants fail to provide an accessible route to Terrace Café that is readily accessible to and usable by disabled individuals, so that Plaintiffs are entirely prohibited from accessing each and every space and element of Terrace Café, and are therefore prohibited from enjoying the same benefits and experiences the non-disabled get to enjoy;

z)   Defendants make Eight75 Bar and its associated

benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to approach the bar counter to order a drink, or sit at the bar to socialize, or any other benefits that able-bodied individuals receive at Eight75 Bar;

aa) Defendants' seating arrangement in the Eight75 bar area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Eight75 bar area;

bb) Defendants make Breeze Bar and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the

opportunity to approach the bar counter to order a drink, or sit at the bar to socialize, or any other benefits that able-bodied individuals receive at Breeze Bar;

cc)   Defendants' seating arrangement in the Breeze Bar area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Breeze Bar area;

dd)   Defendants' seating arrangements in the Snacks dining area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit

at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the experience;

ee) Defendants make the ordering and pick-up counters in the Snacks area in the casino inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, which means Plaintiffs cannot fully and equally use the ordering and pick-up counters to transact business and pick up their food orders in the same way the non-disabled do, because the non-disabled have ordering and pick-up counters they can use independently;

ff) Defendants' seating arrangements in the buffet dining area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able

bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the experience;

gg)  Defendants make the self-service counters throughout the buffet inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, and failing to arrange the items on the self-service counters in a way that the disabled can independently access the items, which means Plaintiffs cannot fully and equally use the self-service counters to select their food or put toppings or condiments on their food choices in the same way the non-disabled do, because the non-disabled have self-service counters they can use independently;

hh)  Defendants' seating arrangements in the Roasted Bean seating area is designed, positioned, and oriented in a

way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Roasted Bean coffee house experience;

ii)   Defendants make the ordering and pick-up counters in The Roasted Bean inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, which means Plaintiffs cannot fully and equally use the ordering and pick-up counters to transact business and pick up their food and beverage orders in the same way the non-disabled do, because the non-disabled have ordering and pick-up counters they can use independently;

**jj)**   Defendants make the self-service beverage condiment and supplies counter in The Roasted Bean inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, and failing to arrange the items on the self-service beverage condiment and supplies counter in a way that the disabled can independently access the items, which means Plaintiffs cannot fully and equally use the self-service counters to get supplies such as lids and straws, or to get condiments and other items for their beverages in the same way the non-disabled do, because the non-disabled have self-service beverage condiment and supplies counters they can use independently;

**kk)**   Defendants' seating arrangements in the Häagen-Dazs seating area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same

experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Häagen-Dazs experience;

ll)   Defendants make the sales/service counter in Häagen-Dazs inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter with the required clear counter surface at the required accessible height, which means Plaintiffs cannot fully and equally use the counter to transact business and pick up their ice cream orders in the same way the non-disabled do, because the non-disabled have a sales/service counter they can use independently;

mm)  Defendants make hostess counters throughout their establishment inaccessible for use by the handicapped by failing to provide either a parallel or a forward approach to the counters with the required clear counter

surface, which means Plaintiffs cannot fully and equally use the hostess counters throughout Beau Rivage to interact with the hostesses to be seated at tables and/or put their names on waiting lists for tables in the same way the non-disabled do, because the non-disabled have hostess counters they can use independently to put their names on waiting lists for tables and/or interact with hostesses to be seated at tables;

nn) Defendants fail to provide token cups in the arcade at an accessible height and location for use by the disabled, because unlike able bodied individuals, disabled individuals are forced to seek assistance to retrieve the token cups on top of the machine, or are outright excluded from the opportunity to play the arcade games whatsoever;

oo) Defendants fails to provide a place for the disabled both to sit and eat like able-bodied people can;

pp) Defendants make their casino games inaccessible for use by the disabled by failing to maintain the ADA

accessible features whatsoever so that Plaintiffs are excluded from being able to approach the games, whereas, non-disabled individuals are able to independently use all the casino games;

**qq)** Defendants make their casino games on the bar counter at Breeze Bar inaccessible for use by the disabled by failing to maintain the ADA accessible features whatsoever so that Plaintiffs are excluded from being able to approach the bar counter on which the games are located, whereas, non-disabled individuals are able to independently use the casino games on the bar counter in Breeze Bar;

**rr)** Defendants make their Smoke Free Slots gaming area inaccessible for use by the disabled by failing to maintain any ADA accessible features whatsoever so that Plaintiffs are excluded from being able to approach the games, whereas, non-disabled individuals are able to independently use all the of the Smoke Free area casino games;

**ss)**  Defendants make their High Limits gaming area inaccessible for use by the disabled by failing to maintain any ADA accessible features whatsoever so that Plaintiffs are excluded from being able to approach the games, whereas, non-disabled individuals are able to independently use all the High Limits area casino games;

**tt)**  Defendants make the High Limits area bar and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to approach the bar counter to order a drink, or sit at the bar to socialize, or any other benefits that able-bodied individuals receive at the High Limits area bar;

**uu)**  Defendants fail to provide accessible cashier counters to the disabled which means Plaintiffs cannot fully and equally use the counters to transact business in the same way the non-disabled do, because the non-disabled have counters they can use independently;

**vv)** Defendants fail to provide an accessible fitness center to disabled individuals, which means Plaintiffs cannot fully and equally use the fitness center in the same way the non-disabled do, because the non-disabled have a fitness center they can use independently;

**ww)** Defendants fail to provide an accessible Spa & Salon area to disabled individuals, which means Plaintiffs cannot fully and equally use the Spa & Salon area in the same way the non-disabled do, because the non-disabled have a Spa & Salon area they can use independently;

**xx)** Defendants fail to provide accessible guest room elevators to disabled individuals by requiring guests to use the room key card to activate the elevator, which means Plaintiffs cannot independently use the elevator to ride up to their rooms, and therefore cannot fully and equally use the guest room elevators in the same way the non-disabled do;

**yy)** Defendants fail to provide hotel suites to disabled individuals, which means Plaintiffs are forced to be

segregated to inferior services and rooms, whereas non-disabled are able to reserve the hotel suites and enjoy the luxury features of the suites;

zz)   Defendants fail to provide hotel panoramic king rooms with an ocean view to disabled individuals, which means Plaintiffs cannot stay and enjoy the ocean view from their hotel room the way non-disabled individuals can;

aaa)   Defendants fail to provide an accessible reservation system for disabled individuals, which means that Plaintiffs are segregated, separated and otherwise screened out from being able to reserve a hotel suite, whereas non-disabled individuals are able to make reservations;

bbb)   Defendants fail to provide a description of the accessible features of the resort for disabled individuals, which means Plaintiffs cannot fully and equally evaluate the features of the Beau Rivage in the same way the non-disabled do, because the non-disabled are able to independently use the website to evaluate the features

of the hotel;

ccc) Defendants fail to provide a description of the accessible features of the resort hotel suites for disabled individuals;

ddd) Defendants fail to provide a mobile web platform that enables voice recognition software and other assistive touch technologies for disabled individuals to receive the same services through the mobile app as non-disabled individuals do;

eee) Defendants fail to provide a policy to guarantee rooms that disabled individuals reserve;

fff) Defendants' policies, practices, and procedures are conducted without regard to disabled individuals;

ggg) Defendants' practice is to only make modifications to practices and policies and repairs to barriers upon the demand of the disabled.

45. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes,

Defendants have no policies, practices, or procedures, or else they have failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

46. As the continuing architectural barriers and the failure to provide full and equal use of the facilities establishes, Defendants' existing, practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

47. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, and procedures or else they failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at their casino and resort as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Beau Rivage .

48. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

49. To date, the Defendants' discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

50. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiffs hereby demand that Defendants both create and adopt a corporate practice and policy that Defendants (1) will fully comply with Title III, ADA, and all its implementing regulations so that physical and non-physical barriers identified above are permanently removed from Defendants' casino and resort consistent with the ADA; (2) Defendants will provide the

disabled, including those with mobility limitations full and equal use and enjoyment of Beau Rivage; (3) Beau Rivage will remedy their practice of making ADA Title III remediations only upon demand by the disabled (4) Beau Rivage will remedy their practice of screening out disabled individuals through the use of their reservation system; (5) Beau Rivage  will remedy its practice of screening out disabled individuals through the use of its phone reservation system; (6) Beau Rivage will remedy their practice of not guaranteeing Plaintiffs and others similar situated the accessible room they requested;

51. As pled above, Beau Rivage Resorts, LLC, "owns" the real property and its improvements at 875 Beach Blvd, Biloxi, Mississippi 39530, 42 U.S.C. § 12182, and "operates" the establishment located at 875 Beach Blvd, Biloxi, Mississippi 39530, more commonly known has Beau Rivage. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above.

52. As pled above, MGM Resorts International, is the "owner" of the public internet website beaurivage.com as well as the mobile application and "operates" the world-wide websites services that are available to the public at Beau Rivage. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above. 42 U.S.C. § 12182.

53. The ADA is over twenty-five (25) years old. Defendants know they must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

54. By this Complaint, Plaintiffs provide sufficient notice of their demands for an alteration in Defendants' policies, practices, and procedures.

55. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are

entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

56. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

57. Plaintiffs re-allege paragraphs 1-56 above.

58. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

59. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**60.** Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

61. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

62. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

63. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

64. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendants' acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

65. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other

forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

66. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

67. The keystone for this analysis is Defendants *must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience.* <u>Spector v. Norwegian Cruise Line Ltd.,</u> 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, <u>Baughman v. Walt Disney World Company</u>, 685 F.3D 1131, 1135 (9th Cir. 2012).

68. Plaintiffs Patrick Dunn and Hope Elly were denied full and equal access to Beau Rivage. Plaintiffs specifically and definitely want to return to the Defendants' resort and casino to enjoy the deep and diverse resort destination that creates experiences that engage, entertain and inspire that simply do not exist anywhere else, in addition to the variety of entertainment, the luxurious accommodations, award winning restaurants, top-of-the-line gaming, superior guest services, elegantly appointed hotel rooms and luxurious suites, and endless excitement Beau Rivage provides. More specifically, Plaintiffs want to be afforded the same level of service that is offered to non-disabled individuals and which Defendants have

failed to provide to Plaintiffs as follows: Defendants failed to provide an accessible parking structure and accessible route into Beau Rivage for disabled individuals, which means Plaintiffs cannot park, cannot independently get out of their cars and onto their wheelchairs, cannot independently travel from the parking garage into Beau Rivage, cannot determine if there is a usable parking space, and must determine by trial and error how they are to park and move into Beau Rivage; Defendants failed to provide Plaintiffs and other disabled individuals the required maneuvering clearance and clear floor space in almost every way possible, which means that the disabled cannot travel and move throughout Beau Rivage on the same paths of travel that non-disabled individuals use to travel throughout Beau Rivage; Defendants failed to provide Plaintiffs the same opportunity to participate in and enjoy the benefits of the MLife Rewards players club, including but not limited to earning rewards that convert to slot credits, earning benefits at the players tables, earning valuable "comp" dollars that can be redeemed at the restaurants, receiving monthly

deals for the Beau Rivage and other MGM "MLife" resorts in the mail, among other benefits of the MLife Rewards players club; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the MLife Rewards Players Club counter, while the non-disabled can fully and independently access the MLife Rewards Players Club counter and the plethora of services provided at the counter; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when at Beau Rivage; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the check-in counters, while the non-disabled can independently access a plethora of counters and services provided at the counters to check-in; Defendants failed to provide the same experience to Plaintiffs by failing to provide accessible lounge seating in the outdoor area adjacent to the arcade and The Roasted Bean, which means that Plaintiffs and other disabled individuals are denied the opportunity to sit outside, relax, and enjoy the outdoors and Beau Rivage's elegance and beauty in the same

way the non-disabled do; Defendants failed to provide Plaintiffs that same experience by designing, positioning and orienting their seating arrangement in the outdoor area adjacent to the arcade and The Roasted Bean in a way that excludes and segregates disabled individuals to an experience that is not the same experience as non-disabled individuals have when lounging in the outdoor seating area because unlike the non-disabled, disabled individuals are outright excluded from the opportunity to sit outside, relax, and enjoy the outdoors and Beau Rivage's elegance and beauty from the same areas that non-disabled individuals are able to sit and enjoy it; Defendants failed to provide the same experience to Plaintiffs by making it nearly impossible for the disabled to access the seating throughout Beau Rivage, while the non-disabled can independently access and use the seating throughout Beau Rivage to their leisure and convenience; Defendants failed to provide the same experience to Plaintiffs by making it nearly impossible for the disabled to access the lounge seating throughout Beau Rivage, while the non-disabled can fully and

independently access and use the lounge seating throughout Beau Rivage to their leisure and convenience; Defendants failed to provide an accessible route that connects the resort to all of the spaces and accessible elements throughout the establishment for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get throughout establishment independently, if they can make it at all; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when shopping at the Impulse gift shop; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in the Impulse gift shop, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide an accessible route that connects the entrance of Impulse gift shop to all of the spaces, elements, and retail aisles in the gift shop for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get into and throughout Impulse gift shop independently, if they can make it at all;

Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when shopping at Bellini Gifts and Men's Apparel; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counters in Bellini, while the non-disabled can independently access the counters and services provided at the counters; Defendants failed to provide an accessible route that connects the entrances of Bellini to all of the spaces, elements, and retail aisles in the store for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get into and throughout Bellini independently, if they can make it at all; Defendants failed to provide an accessible dressing room in Bellini that is readily accessible to and usable by disabled individuals; Defendants failed to provide the same experience by failing to provide a bench in the Bellini dressing rooms for the disabled to sit while trying on clothes, while the non-disabled can fully use the bench to sit and try on clothes; Defendants failed to provide the accessible signage of the Bellini dressing rooms so that the

disabled, unlike the non-disabled, do not even know what dressing rooms are usable by individuals with disabilities, if any at all; Defendants failed to provide Plaintiffs that same shopping experience that non-disabled individuals have when shopping at stores throughout Beau Rivage; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counters in the stores throughout Beau Rivage, while the non-disabled can independently access the counters and services provided at the counters; Defendants failed to provide an accessible route that connects the entrances of the stores throughout Beau Rivage to all of the spaces, elements, and retail aisles in each of the stores for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get into and throughout each of the stores independently, if they can make it at all; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when visiting the Spa & Salon at Beau Rivage; Defendants failed to provide the same experience by making it nearly impossible for the disabled to

access the sales/service counter in the spa and salon, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide the same experience by failing to provide lounge seating in the spa and salon for the disabled to sit and relax while waiting on their spa experience, while the non-disabled can fully use the lounge seating; Defendants failed to provide Plaintiffs that same experience by failing to provide an accessible fitness center for the disabled, while the non-disabled can fully access the fitness center; Defendants failed to provide accessible restrooms throughout Beau Rivage for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the restrooms, clean up after using the restrooms, move throughout the restrooms, and use the other elements of the restrooms; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counters throughout the establishment, though the able-bodied can fully use and enjoy all the sales/service counters

throughout Beau Rivage; Defendants failed to provide Plaintiffs and other disabled individuals the same opportunity to use point of sale machines at sales/service counters throughout Beau Rivage to pay for their purchases; Defendants failed to provide Plaintiffs that same experience as non-disabled individuals by making it nearly impossible for the disabled to order and pay for food and drinks at The Roasted Bean Café; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when sitting and enjoying their food, coffee and other beverages at The Roasted Bean by failing to provide access to the dining tables and seating in The Roasted Bean Café; Defendants failed to provide Plaintiffs that same experience as non-disabled individuals by making it nearly impossible for the disabled to order and pay for their ice cream, shakes and beverages at Häagen-Dazs; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when sitting and enjoying their Häagen-Dazs treats by failing to provide access to the dining tables and seating at Häagen-Dazs;

Defendants failed to provide Plaintiffs that same experience as non-disabled individuals by making it nearly impossible for the disabled to order and pay for food and drinks in the Snacks area in the casino; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when sitting and enjoying their food and drinks in the Snacks area in the casino by failing to provide access to the dining tables and seating in the Snacks dining area in the casino; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when eating and ordering food and beverages at restaurants and bars throughout Beau Rivage; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when dining at the restaurants and bars throughout Beau Rivage by failing to provide access to dining tables and seating, which the non-disabled are able to access freely; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when dining at Terrace Café by failing to provide access leading up to the hostess counter in addition to the dining

tables and seating in Terrace Café; Defendants failed to provide Plaintiffs that same experience when eating at The Buffet by making it nearly impossible for the disabled to access the food selection counters, although the non-disabled can access the food selection counters independently; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when dining at The Buffet by failing to provide access to the dining tables and seating in The Buffet; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when dining at BR Prime by failing to provide access to the dining tables and seating in BR Prime; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when dining at Stalla by failing to provide access to the dining tables and seating in Stalla; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when socializing and enjoying drinks and entertainment at bars and nightclubs throughout Beau Rivage; Defendants failed to provide Plaintiffs that same experience that non-disabled

individuals have when socializing and enjoying drinks and entertainment at bars and nightclubs throughout Beau Rivage by failing to provide access to tables and seating, which the non-disabled are able to access freely; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when enjoying drinks at Breeze Bar by failing to provide access to the bar and seating in Breeze Bar; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when socializing and enjoying drinks and entertainment at Eight75 by failing to provide access to the bar and seating in Eight 75; Defendants failed to provide the disabled lounge seating and tables in Eight75, which the able-bodied are provided and able to fully access and enjoy; Defendants failed to provide the same experience to Plaintiffs by failing to provide accessible lounge seating by the ocean, which means that Plaintiffs and other disabled individuals are denied the opportunity to sit outside by the ocean and relax, lounge and enjoy the outdoors in the same way the non-disabled do; Defendants failed to provide

Plaintiffs that same experience by designing, positioning and orienting their seating arrangements in the lounge seating area by the ocean in a way that excludes and segregates disabled individuals of the same experience that non-disabled individuals have when lounging in the lounge seating area by the ocean because unlike the non-disabled, disabled individuals are outright excluded from the opportunity to sit outside by the ocean and relax, lounge and enjoy the outdoors from the same areas and in the same ways that non-disabled individuals are able to sit and enjoy it; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when at the pool area; Defendants failed to provide an accessible route that connects the resort to all of the spaces and elements of the pool area for disabled individuals, which means that Plaintiffs and other disabled individuals are entirely prohibited from accessing each and every space and element of the pool area, and are therefore prohibited from enjoying the pool area in the same way that the non-disabled area able to enjoy it; Defendants failed to provide Plaintiffs and other disabled

individuals the same experience that the non-disabled have when at the pool area by failing to maintain any ADA accessible features whatsoever, which means that unlike the non-disabled, the disabled are completely excluded from the opportunity to lounge in the pool chairs, swim in the pool, sit at the hot tub, and use the cabanas among other services at the pool, all of which the non-disabled have the opportunity to independently use and enjoy; Defendants failed to provide an accessible Pool Bar & Café to disabled individuals, which means that unlike the non-disabled, Plaintiffs and other disabled individuals are prohibited from sitting at the bar to socialize, enjoy the shade, order drinks and food, or enjoy any other benefits that the non-disabled are able to enjoy at the bar; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when enjoying the Pool Bar & Café by failing to provide access to the tables and seating at the Pool Bar & Café; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when playing games in the arcade by failing to provide the required

clear floor or ground space; Defendants failed to provide Plaintiffs and other disabled individuals the same experience non-disabled individuals have when in the arcade area by failing to provide token cups at an accessible height and location for use by the disabled, which means that unlike the non-disabled the disabled must seek assistance from a third party or a Beau Rivage employee to retrieve the token cups located on top of the token machine, and are therefore outright denied the opportunity to play arcade games; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when playing games in the casino by failing to provide the required clear floor or ground space; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when at the cashier counters in the casino by failing to provide an accessible cashier counter to the disabled, which means that Plaintiffs and other disabled individuals are denied the opportunity to independently use the cashier counters to transact business in the same way that the non-disabled do; Defendants failed to provide Plaintiffs

that same experience that non-disabled individuals have when playing games in the Smoke Free Slots casino area by failing to provide the required clear floor or ground space at the games, and failing to provide accessible lounge seating in the Smoke Free Slots area for disabled individuals; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when playing games in and enjoying all of the elements of the High Limits casino area by failing to provide the required clear floor or ground space at the games, failing to provide an accessible bar area, and failing to provide accessible lounge seating in the High Limits area for disabled individuals; Defendants failed to maintain the accessible signage throughout Beau Rivage so that the disabled, unlike the non-disabled, do not even know what route and what facilities are usable by individuals with disabilities; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial

and error what facilities can even be used by them; Defendants failed to provide Plaintiffs that same online experience non-disabled individuals have which includes making reservations on the online website; Defendants failed to provide Plaintiffs the same experience that non-disabled individuals have when staying at Beau Rivage by failing to provide the disabled the opportunity to choose and stay in accessible hotel suites that are the same elegantly appointed luxurious suites offered to the non-disabled,  including but not limited to rooms with views of the ocean, rooms with views of the city, Deluxe Double rooms, Deluxe King rooms, Deluxe Panoramic King rooms, Cypress Suites, Jasmine King Bed Suites, Junior Suites, suites with panoramic views, and all of the hotel suites; Defendants failed to provide Plaintiffs the same experience by failing to provide an accessible reservation system through the Beau Rivage website for disabled individuals, which means the disabled are segregated, separated, and otherwise screened out from being able to reserve a hotel room at Beau Rivage, while the non-disabled are able to fully and equally make hotel reservations

at Beau Rivage; Defendants failed to provide Plaintiffs the same experience by failing to provide a description of the accessible features of the resort on their website, which means Plaintiffs cannot fully and equally evaluate the features of Beau Rivage to determine what features, if any, are accessible to and usable by disabled individuals, while the non-disabled are able to independently use the website to evaluate all of the non-accessible features of Beau Rivage provided to them; Defendants failed to provide Plaintiffs the same experience by failing to provide an accessible reservation system through their mobile application for disabled individuals, which means the disabled are excluded from being able to reserve a hotel room at Beau Rivage, check-in, make meal reservations, among many other benefits through Defendants' mobile application services, while the non-disabled are able to fully and equally make hotel reservations at Beau Rivage through the mobile application; Defendants failed to provide Plaintiffs the same experience by excluding the disabled from using Defendants' mobile application to "skip the Front Desk line" and check-in,

while the non-disabled are able to independently "skip the Front Desk line" and check in through Defendants' mobile application; Defendants failed to provide Plaintiffs the same experience by failing to provide a mobile application service that allows the disabled to view all of the accessibility features at Beau Rivage to determine what features, if any, are accessible to and usable by disabled individuals, while the non-disabled are able to independently use the mobile application to view and evaluate all of the non-accessible features of Beau Rivage provided to them; Defendants failed to provide Plaintiffs the same experience by excluding the disabled from making table reservations at all of Beau Rivage's restaurants through the mobile application, while the non-disabled are able to independently use Defendants' mobile application to make table reservations at any of the restaurants throughout Beau Rivage; Defendants failed to provide Plaintiffs the same experience by excluding the disabled from viewing the up and coming live entertainment at Beau Rivage through the mobile application, while the non-disabled are able to independently

use Defendants' mobile application to view all the up and coming live entertainment at Beau Rivage; Defendants failed to provide Plaintiffs the same experience by excluding the disabled from being able to use Defendants' mobile application to view, access and receive the benefits of the MLife Rewards program, while the non-disabled are able to independently use Defendants' mobile application to view, access and receive all of the benefits of the MLife Rewards program; Defendants failed to provide Plaintiffs the same experience by failing to modify their mobile application service to allow assistive technology for the disabled, which includes but is not limited to voice recognition, alternative input methods, and assistive touch functions, among other accessibility methods that Plaintiffs and other disabled individuals require in order to use mobile applications and their associated features in the same, equal way that non-disabled individuals are able to use them; Defendants failed to maintain the accessible features of Beau Rivage that are required to be readily accessible to and usable by Plaintiffs and others similarly situated, such as maintaining

the parking structure, restrooms and all of the restaurants, bars and their associated services and elements; and all the foregoing failures by Defendants inhibited Plaintiffs from having the same experience that non-disabled individuals have when at Beau Rivage.

69. In its Preamble to the Title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

70. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)) (ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) require that goods, services, and

accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

71. Thus, Defendants' "use" of the accessible features constitutes statutory discrimination in violation of the ADA because Defendants have segregated and separated the disabled from the non- disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination

against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*)

72. Defendants discriminated against Plaintiffs by denying Plaintiffs "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiffs an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Beau Rivage .

73. Defendants' conduct and Defendants' unequal treatment to Plaintiffs constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiffs and others similarly situated unequally.

74. Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals

with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendants will continue to not maintain the required accessible features at Defendants' facility. 28 C.F.R.§ 36.211(a).

75. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

76. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendants.

## COUNT FOUR
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.302 (e)(1)(i)-(ii)
### *(Failure of website to show accessible features of the Beau Rivage)*

77. Plaintiffs re-allege paragraphs 1-76 above.

78. The ADA's legislative history provides that integration is fundamental to the purposes of the ADA. Provision of segregated accommodations, goods and services relegate persons with disabilities to be an inferior second-class citizen. *H. Rep. 101–485(III), 101st Cong., *1279 2d Sess., at 56,*

*reprinted in 1990 U.S.C.C.A.N. 445, 479. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." Id. at 50, 1990 U.S.C.C.A.N. at 473.*

79. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5).

80. However, the Internet of today did not exist when Congress originally enacted the ADA and, accordingly, neither the ADA nor the regulations the Department of Justice promulgated under the ADA specifically addresses access to Web sites. *But the statute's broad and expansive nondiscrimination mandate*

*reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also *Netflix*, 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public."* Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,* 37 F.3d 12, 20 (1st Cir. 1994)). The "broad mandate" of the ADA and its "comprehensive character" are resilient enough to keep pace with the fact that the virtual reality of the Internet is almost as important now as physical reality alone was when the statute was signed into law. The meteoric rise of virtual reality through the Internet and its impact on communal and commercial affairs could not have been anticipated by Congress does not mean the law's application to the Internet and website is ambiguous; "the fact that a statute can be applied in situations not expressly anticipated by Congress does not

demonstrate ambiguity. It demonstrates breadth". *Andrews v. Blick Art Materials, LLC*, No. 17-CV-767, 2017 WL 3278898, (E.D.N.Y. Aug. 1, 2017). Today, internet technology enables individuals to participate actively in their community and engage in commerce from the comfort and convenience of their home. It would indeed be a cruel irony to adopt the interpretation of the ADA espoused by *Blick*, which would render the legislation intended to emancipate the disabled from the bonds of isolation and segregation obsolete when its objective is increasingly within reach. Plaintiff has stated a claim under the ADA. *Andrews v. Blick Art Materials, LLC*, No. 17-CV-767, 2017 WL 3278898, (E.D.N.Y. Aug. 1, 2017).

81. Congress expressly stated when enacting the ADA that: "…*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times*". In light of this, the United States Department of Justice issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and

Local Government Entities and Public Accommodations. 75 Fed Reg. 43460. The Department of Justice explained in the ANPRM that although the Department has been clear that the ADA applies to websites of public accommodations, inconsistent court decisions, differing standards for determining web accessibility, and repeated calls for Department action warranted further guidance. *Id.* at 43464. Through the ANPRM, the Department sought to explore what regulatory provisions they could propose *to make clear to entities covered by the ADA of their obligations to make their websites accessible.*

**82.** To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

83. By its clear text, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

84. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the

privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182, 28 C.F.R. 36.302(e)(1)(i) and (ii). Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held persuasively in _Rendon v. Valleycrest Prod., Ltd._ 294 F.3d 1279, (11th Cir. 2002) that:

> _"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both_ <u>_tangible barriers_</u> _(emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and_ <u>_intangible barriers_</u> _(emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendants entity's goods, services and privileges."_

85. The Beau Rivage  website and online reservation system did not allow plaintiffs to use the website and online reservation system in the same manner as individuals with disabilities,

because the website and online reservation system failed to show any of the accessible features of Beau Rivage, which includes but is not limited to: Defendants failing to identify and describe the accessible features of (1) the Casino, (2) the Resort's common areas and its associated amenities; (3) Coast Seafood & Brew; (4) The Buffet; (5) Terrace Café; (6) BR Prime; (7) Jia; (8) the Pool Bar & Café; (9) The Roasted Bean; (10) the Snacks counter; (11) Stalla; (12) Häagen-Dazs; (13) Breeze Bar; (14) Eight75; (15) Coast Nightclub; (16) Beau Rivage Theatre; (17) the pool; (18) the Spa & Salon at Beau Rivage; (19) the fitness center; (20) the arcade; (21) Impulse gift shop; (22) Beau Rivage Emporium gift shop; (23) the Accents store; (24) the Actique Sportswear store; (25) the BR Kids store; (26) the Beau Rivage Collections store; (27) the Bellini Gifts & Men's apparel stores; (28) the BIconic store; (29) the Capri store; (30) the Da Milano store; (31) The Jewelry Box store; (32) the Waves store; and (33) the accessible features of the guest rooms and suites themselves, much less provide them options for accessible features. Moreover, Defendants provide a plethora of services

and their associated benefits, including but not limited to: hotel stay packages, virtual tours of their shopping and dining variety, a variety of top-of-the-line dining options, and their players club ("MLife Rewards") and its associated benefits and services to able-bodied individuals, but fail to provide those same services of the accessible features of the Beau Rivage to disabled individuals which relegates and otherwise segregates disabled individuals to inferior benefits and services of the Beau Rivage .

86. The Department of Justice has promulgated regulations that specifically prohibit Defendants' conduct in this case as to the Defendants' places of lodging. 28 C.F.R. 36.302(e) specifically provides:

> "(1) *Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party –*
>
> > (i) *Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible*

*guest rooms during the same hours and <u>in the same manner as</u> individuals who do not need accessible rooms;*

*(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;"* (emphasis added).

87. Defendants' website and reservation system did not allow Plaintiffs to use the system in the same manner as individuals without disabilities, because (1) the website failed to show or otherwise inform of the accessibility features at the hotel; (2) it did not offer the same type of guest rooms to the disabled as to individuals without disabilities; and (3) it failed to allow Plaintiffs and others similarly situated, to make reservations in the same manner as other individuals who do not need accessibility features. Specifically, through the reservation system Defendants only offer the disabled hotel rooms that are allegedly accessible that are standard guest rooms, without any

of the choices for upgraded amenities that are offered in the non-accessible rooms. The choices for upgraded amenities include but are not limited to the floor level, rooms that are adjoining, the different types of suites and rooms, a view of the water, a view of the city, room size, the type of amenities offered in the room, among many other features non-disabled guests are offered, including the floor level and suites.

88. The Defendants' reservation system did not allow Plaintiffs to make reservations in the same manner as the non-disabled because it failed to provide accessible opportunities to make reservations for the elegantly appointed rooms and luxurious suites that Beau Rivage offers such as 1) a Deluxe Double Room; (2) a Deluxe King Room; (3) a Deluxe City View Room; (4) a Deluxe Ocean View Room; (5) a Deluxe Panoramic King Room; (6) a Junior Suite; (7) a Cypress Suite; (8) a Jasmine Suite King Bed Room; and (9) an Ocean View King Room.

89. To date, the Defendants' discriminating actions continue.

90. As pled above, Beau Rivage Resorts, LLC, "owns" the real property and its improvements at 875 Beach Blvd., Biloxi,

Mississippi, 39530 42 U.S.C. § 12182, and "operates" the establishment located at 875 Beach Blvd., Biloxi, Mississippi, 39530., more commonly known as Beau Rivage. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above.

91.  As pled above, MGM Resorts International, is the "owner" of the public internet website beaurivage.com and "operates" the world-wide websites services that are available to the public at Beau Rivage. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above. 42 U.S.C. § 12182.

92.  Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §

12205.

93.   Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.


## COUNT FIVE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12182(b)(2)(A)(i)
*(Use of technology that tends to screen out individuals with disabilities)*

94.   Plaintiffs re-allege paragraphs 1-93 above.

95.   The ADA's legislative history provides that integration is fundamental to the purposes of the ADA. Provision of segregated accommodations, goods and services relegate persons with disabilities to be an inferior second-class citizen. *H. Rep. 101–485(III), 101st Cong., *1279 2d Sess., at 56, reprinted in 1990 U.S.C.C.A.N. 445, 479.* "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." *Id. at 50, 1990 U.S.C.C.A.N. at 473.*

96.   Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional

exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5).

97.   However, the Internet today did not exist when Congress originally enacted the ADA and, accordingly, neither the ADA nor the regulations the Department of Justice promulgated under the ADA specifically addresses access to Web sites. *But the statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also *Netflix,* 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general*

*public." Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,* 37 F.3d 12, 20 (1st Cir. 1994)).

**98.**   Congress expressly stated when enacting the ADA that: "…*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times*". In light of this, the United States Department of Justice issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations.   75 Fed Reg. 43460.  The Department of Justice explained in the ANPRM that although the Department has been clear that the ADA applies to websites of public accommodations, inconsistent court decisions, differing standards for determining web accessibility, and repeated calls for Department action warranted further guidance. *Id.* at 43464. Through the ANPRM, the Department sought to explore what regulatory provisions they could propose *to make clear to*

*entities covered by the ADA of their obligations to make their websites accessible.*

99. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

100. By its clear text, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was

only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

101. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in _Rendon v. Valleycrest Prod., Ltd._ 294 F.3d 1279, (11th Cir. 2002) that:

> "_A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and_

> *architectural barriers that would prevent a*
> *disabled person from entering an*
> *accommodation's facilities and accessing*
> *its goods, services and privileges, see 42*
> *U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible</u>*
> *<u>barriers</u> (emphasis added), such as*
> *eligibility requirements and screening*
> *rules or discriminatory policies and*
> *procedures that restrict a disabled person's*
> *ability to enjoy the Defendants entity's*
> *goods, services and privileges.*

102. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(i) discrimination

includes:

> *The imposition or application of eligibility*
> *criteria that screen out or tend to screen out*
> *an individual with a disability or any class*
> *of individuals with disabilities from fully*
> *and equally enjoying any goods, services,*
> *facilities, privileges, advantages, or*
> *accommodations, unless such criteria can*
> *be shown to be necessary for the provision*
> *of the goods, services, facilities, privileges,*
> *advantages, or accommodations being*
> *offered.*

103. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(iii) discrimination

includes:

> *A failure to take such steps as may be*
> *necessary to ensure that no individual with*
> *a disability is excluded, denied services,*

> *segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.*

104. The plain language of these statutory provisions applies to discrimination in offering the goods and services "of" a place of public accommodation or the services, programs, and activities "of" a public entity, rather than being limited to those goods and services provided "at" or "in" a place of public accommodation or facility of a public entity.

105. A place of public accommodation also may not refuse to make reasonable modifications to a policy or practice that has the consequence of denying such individuals access to its services. Nor can a public accommodation refuse to make modifications to a policy or practice that tends to deny individuals with disabilities access to the goods and services of the public accommodation.

106. Defendants utilize the Beau Rivage online website and reservation system to screen out disabled individuals, so that they are not informed of the accessibility features at the hotel as well as not offered the same type of guest rooms as other individuals without disabilities. The screening out process specifically involves only offering hotel rooms that are allegedly accessible that are standard guests rooms without any upgraded amenities that are offered in the non-accessible rooms. The upgraded amenities include but are not limited to the floor level, rooms that are adjoining, the different types of suites and rooms, a view of the water, view of the city, room size, the type of amenities offered in the room, among many other features non-disabled guests are offered, including the floor level and suites.

107. The Beau Rivage online website served to screen Plaintiffs in that they were unable to determine any of the accessible features of Beau Rivage, which includes but is not limited to: Defendants failing to identify and describe the accessible features of (1) the Casino, (2) the Resort's common areas and

its associated amenities; (3) Coast Seafood & Brew; (4) The Buffet; (5) Terrace Café; (6) BR Prime; (7) Jia; (8) the Pool Bar & Café; (9) The Roasted Bean; (10) the Snacks counter; (11) Stalla; (12) Häagen-Dazs; (13) Breeze Bar; (14) Eight75; (15) Coast Nightclub; (16) Beau Rivage Theatre; (17) the pool; (18) the Spa & Salon at Beau Rivage; (19) the fitness center; (20) the arcade; (21) Impulse gift shop; (22) Beau Rivage Emporium gift shop; (23) the Accents store; (24) the Actique Sportswear store; (25) the BR Kids store; (26) the Beau Rivage Collections store; (27) the Bellini Gifts & Men's apparel stores; (28) the BIconic store; (29) the Capri store; (30) the Da Milano store; (31) The Jewelry Box store; (32) the Waves store; and (33) the accessible features of the guest rooms and suites themselves, much less provide them options for accessible features. Moreover, Defendants provide a virtual tour of the features of Beau Rivage including but not limited to Beau Rivage's shopping variety and variety of restaurants to able-bodied individuals, but fails to make a virtual tour available of the accessible features of Beau Rivage to disabled individuals.

108. The reservation system served to screen Plaintiffs to only allow them to book non-accessible guest rooms on the website, or alternatively, require Plaintiffs to make a request for accessible rooms after they made reservations for a non-accessible room. The Defendants' reservation system did not offer Plaintiffs any of the types of elegantly appointed rooms and/or luxurious suites that Beau Rivage offers such as 1) a Deluxe Double Room; (2) a Deluxe King Room; (3) a Deluxe City View Room; (4) a Deluxe Ocean View Room; (5) a Deluxe Panoramic King Room; (6) a Junior Suite; (7) a Cypress Suite; (8) a Jasmine Suite King Bed Room; and (9) an Ocean View King Room.

109. Moreover, Defendants' online website, its reservation system, and further exemplified by its non-compliant facility screened out Plaintiffs by failing to ensure that accessible guest rooms are held for Plaintiffs and further, failing to make reasonable modifications in their policies, practices, or procedures, so that Plaintiffs are not excluded, denied services, segregated or otherwise treated differently than other individuals without disabilities.

110. The ADA and the Title III regulation, since their enactment and promulgation, have always required that public accommodations provide effective communication to persons with disabilities through the provision of auxiliary aids and services. A commercial transaction between a customer and a public accommodation requires communication between the two, and in this action, Defendants have chosen to use an online reservation system by which they communicate with able-bodied individuals to complete commercial transactions. Whereas, Defendants have chosen to use their reservation system and online website as a means by which to not communicate and transact business with disabled individuals which is contrary to the broad mandate of the ADA which prohibits not only outright exclusion but also unnecessary differential treatment. See 42 U.S.C. §§ 12182(a), (b)(1)(A), (b)(2)(A)(iii). Congress expressly stated when passing the ADA, "…*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the*

*times[,]" and that technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities." See* H.R. Rep. No. 485, pt. 2, at 108 (1990).

111. These are precisely the sorts of claims Title III was intended to cover. The process for selecting an ADA accessible hotel room is no different than the implementation of eligibility criteria in other contexts that are clearly covered by the Act. For example, there is no question that the administration of admission testing by a private secondary school falls within the scope of Title III. See Section 12189; 28 C.F.R. 36.309. There would be little question that the ADA would apply, and would be violated, if Defendants screened guests as they entered the Hotel Lobby, sending home guests on the grounds that they were deaf or physically disabled or suffered from diabetes or any other disability. See 28 C.F.R. Pt. 36 App. B, p. 640 (commentary to 28 C.F.R. 36.301) ("*It would violate this section to establish exclusive or segregative eligibility criteria that*

*would bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a movie theater*.")  That disabled individuals are screened out by an automated hotel reservation system, rather than by an admission policy administered at the studio door is of no consequence under the statute.

112. Defendants' failure to modify this practice necessary to ensure Plaintiffs the full and equal enjoyment of the Beau Rivage has resulted in the complete exclusion from making reservations online and in the same manner as other individuals who do not have disabilities.  See § 12182(b)(2)(A)(ii)-(iii).

113. The screening process violates the Americans with Disabilities Act by directly and intentionally screening out disabled individuals for the purpose of preventing the disabled from being afforded the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations, at Palace Hotel Casino. 42 U.S.C. § 12182(b)(2)(A)(i).

114. The screening of individuals with disabilities is not necessary to provide accommodations because no accommodations are

provided.

115. To date, the Defendants' discriminating actions continue.

116. As pled above, Beau Rivage Resorts, LLC, "owns" the real property and its improvements at 875 Beach Blvd., Biloxi, Mississippi, 39530. 42 U.S.C. § 12182, and "operates" the establishment located at 875 Beach Blvd., Biloxi, Mississippi, 39530., more commonly known has Beau Rivage. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above.

117. As pled above, MGM Resorts International, is the "owner" of the public internet website beaurivage.com and "operates" the world-wide websites services that are available to the public at Beau Rivage. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above. 42 U.S.C. § 12182.

118. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

119. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**COUNT SIX**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(2)(A)(iii)**
*(Failure to Provide Services Necessary to*
*Ensure Equal Access to Innovative Technology)*

120. Plaintiffs re-allege paragraphs 1-119 above.

121. The ADA was the most sweeping civil rights legislation since the Civil Rights Act of 1964. When it was enacted Congress had no conception of how the Internet would change global commerce. [W]e were not communicating by e-mail, blog, or tweet; we were not filling virtual shopping carts with clothes, books, music, and food; we weren't banking, renewing our driver's licenses, paying taxes or registering for and taking classes online. Congress could not have foreseen these

advances in technology. Despite Congress' great cognitive powers, it could not have foreseen these advances in technology which are now an integral part of our daily lives. Yet Congress understood that the world around us would change and believed that the nondiscrimination mandate contained in the **ADA** should be broad and flexible enough to keep pace. *Achieving the Promises of the Americans with Disabilities Act in the Digital Age—Current Issues, Challenges and Opportunities: Hearing before the H. Subcomm. on the Constitution, Civil Rights, and Civil Liberties of the House Comm. on the Judiciary,* 111th Cong., 2d Sess. 111–95 (2010).

122. Since the internet plays such a critical role in the personal and professional lives of Americans, excluding disabled persons from access to covered entities that use the internet and mobile applications as a means of reaching the public would defeat the purpose of this important civil rights legislation. In today's society, places of public accommodation are increasingly using mobile applications ("mobile apps") to provide services, benefits and goods more effectively to the

public and expand the services it has to offer in new ways. These services that are provided via a public accommodations mobile application also need to be provided to disabled individuals.

123. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(iii) discrimination includes:

> *"A failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."*

124. 28 C.F.R. 36.303(a) provides:

> *"A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges,*

> *advantages, or accommodations being offered*
> *or would result in an undue burden, i.e.,*
> *significant difficulty or expense."*

125. Title III states that discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii). Regulations promulgated by DOJ implementing Title III require public accommodations to provide "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Auxiliary aids and services include . . . *accessible electronic and information technology*, among other methods. 28 C.F.R. § 36.303(b). Auxiliary aids and services also includes acquisition or modification of equipment or devices, and other

similar services and actions. 28 C.F.R. 36.303(b)(3)-(4).

126. The plain language of these statutory provisions applies to discrimination in offering the goods and services "of" a place of public accommodation or the services, programs, and activities "of" a public entity, rather than being limited to those goods and services provided "at" or "in" a place of public accommodation or facility of a public entity.

127. A place of public accommodation also may not refuse to make reasonable modifications to a policy or practice that has the consequence of denying such individuals access to its services. Nor can a public accommodation refuse to make modifications to a policy or practice that tends to deny individuals with disabilities access to the goods and services of the public accommodation.

128. The ADA and the Title III regulation, since their enactment and promulgation, have always required that public accommodations provide effective communication to persons with disabilities through the provision of auxiliary aids and services. A commercial transaction between a customer and a

public accommodation requires communication between the two, and in this action, Defendants have chosen to provide a service through a mobile application to book a hotel, view restaurants at the hotel, view entertainment options, access to the MLife rewards players club benefits, and among many other services through the mobile application all of which it communicates with able-bodied individuals to provide services to the public. Whereas, Defendants have chosen to use their mobile application and services it offers through the application as a means by which to not communicate and provide services to the disabled individuals. This is contrary to the broad mandate of the ADA which prohibits not only outright exclusion but also unnecessary differential treatment. See 42 U.S.C. §§ 12182(a), (b)(1)(A), (b)(2)(A)(iii). Congress expressly stated when passing the ADA, "...*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times[,]*" and that technological advances "*may require public accommodations*

*to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities.*"  *See* H.R. Rep. No. 485, pt. 2, at 108 (1990).

129. These are precisely the sorts of claims Title III was intended to cover. The process for enjoying the goods and services Defendants offer through their mobile apps is no different than the implementation of eligibility criteria in other contexts that are clearly covered by the Act. For example, there is no question that the administration of admission testing by a private secondary school falls within the scope of Title III. See Section 12189; 28 C.F.R. 36.309. There would be little question that the ADA would apply, and would be violated, if Defendants screened guests as they entered the Hotel Lobby, sending home guests on the grounds that they were deaf or physically disabled or suffered from diabetes or any other disability. See 28 C.F.R. Pt. 36 App. B, p. 640 (commentary to 28 C.F.R. 36.301) ("*It would violate this section to establish exclusive or segregative eligibility criteria*

*that would bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a movie theater*."). ("*An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store'. Accordingly, the site of the sale is irrelevant. All that matters is whether the good or service is offered to the public.* (Nat'l Fed'n of the Blind. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015).

130. In such a technological society, "excluding businesses that sell services through the Internet from the ADA would 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." *Netflix,* 869 F.Supp.2d at 200 (quoting *Carparts,* 37 F.3d at 20). (quoting *Nat'l Fed'n of the Blind. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015). Disabled individuals being excluded, denied services, and otherwise treated differently by

the services Defendants provide than to those who are not disabled is of no consequence under the statute. All that matters in the instant matter is that Defendants offer their goods and services to the public through their mobile application.

131. Defendants diminish Plaintiffs' rights under the ADA to fully participate in all aspects of society which is counter to Congresses goal. Defendants' ableism as described throughout the Complaint is excluding Plaintiffs' from equality of opportunity, full participation, independent living, and economic self-sufficiency, and in doing so exclude Plaintiffs from among many other benefits and services which include but are not limited to the following:

   a) Defendants are excluding, denying services, and otherwise segregating Plaintiffs from all of the benefits and services Defendants offer as a result of their failure to modify their mobile application platform to allow assistive technology which includes but is not limited to voice recognition, alternative input methods, assistive

touch functions, and among other accessibility methods that Plaintiffs require to compete on an equal basis and independent self-sufficiency.

b) Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from Defendants services that enables individuals to make hotel reservations through the mobile application;

c) Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants service that enables individuals to view all the accessibility at the Beau Rivage in the same way that Defendants provide all the non-accessible amenities to non-disabled individuals;

d) Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded

from Defendants services that enables individuals to make table reservations at all of the restaurant venues inside Beau Rivage through the mobile application;

e) Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from Defendants services that enables individuals to view the up and coming live entertainment at the Beau Rivage through the mobile application;

f) Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from Defendants services that enables individuals to access and view all of the benefits of MLife in addition to receive the benefits itself of MLife rewards program through the use of the mobile application;

g) Defendants are excluding, denying services, and otherwise segregating Plaintiff as a result of their failure to modify equipment, devices and/or other

similar services. 28 *C.F.R.* § 36.303(b)(3)-(4).

**132.** For over 20 years, the United States Justice Department has consistently maintained that the ADA applies to private websites that meet the definition of a public accommodation. The DOJ stated in the ANPR: "it has been the policy of the United States to encourage self-regulation with regard to the Internet whenever possible and to regulate only where self-regulation is insufficient and where government involvement may be necessary." In the area of ADA accessibility as it relates to mobile applications the W3C has developed the Web Content Accessibility Guidelines which sets forth minimum guidelines for website accessibility. It is the Department of Justice's position that "*the system of voluntary compliance has proved inadequate in providing [w]ebsite accessibility to individuals with disabilities.*" *Id*

**133.** The Department of Justice clarified this position in 2010 in the publicly available ANPR. It is clear from the language in the ANPR that places that meet the definition of a public accommodation have a degree of flexibility in choosing how to

comply with Title III's general requirements of nondiscrimination and effective communication—but, still, they must comply. 75 Fed. Reg. 43, 464, 43, 467; see also Fortyune, 766 F.3d at 1105 (finding a city had sufficient notice that accessible on-street parking was required when the DOJ included a statement in a publicly distributed supplement to a technical assistance manual confirming that "public entities have a general obligation to ensure that governmental services are reasonably accessible even when no technical specifications exist for a particular type of facility.".

134. Defendants' failure to modify this practice necessary to ensure Plaintiffs the full and equal opportunity to enjoy all of goods, services, facilities, privileges, advantages, or accommodations that are offered through the Defendants mobile application, has resulted in the complete exclusion from Plaintiffs being afforded the opportunity to receive the same opportunities and the same services as other individuals who do not have disabilities and enjoy the experience in doing so. See § 12182(b)(2)(A)(ii)-(iii).

**135.** To date, the Defendants' discriminating actions continue.

**136.** As pled above Beau Rivage Resorts, LLC, "owns" and "operates" the Beau Rivage and its goods and services and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

**137.** As pled above MGM Resorts International, "owns" and "operates" the mobile software application and its goods and services it provides at the Beau Rivage and is therefore, pursuant to 42 U.S.C. § 12182, responsible for providing the appropriate services to ensure equal opportunities through equipment, devices and/or other similar services. 28 *C.F.R.* § 36.303(b)(3)-(4) as alleged above.

**138.** Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. they are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

139. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**WHEREFORE**, premises considered, Patrick Dunn and Hope Elly demand judgment against the Defendants on Counts One through Six and request the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendants as well as all Defendants' illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendants to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendants to modify their policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendants to make their business

practices consistent with ADA Title III in the future;

4.  That the Court enter an order directing the Defendants to provide Plaintiffs full and equal access both to the Beau Rivage experience and to the use of the Beau Rivage facilities, and further order Defendants to maintain the required accessible features at the Defendants' establishment so that Plaintiffs and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.  That the Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.  That the Court enter an order enjoining Defendants from using the reservation system to screen and defer to another location individuals with disabilities, as stated in Count Four;

7.  That the Court enter an order enjoining compliance with federal regulations and statutes as to the adequacy of the reservation system for individuals with disabilities, as stated

in Count Five;

8.   That the Court enter an order enjoining Defendants' mobile application to comply with federal regulations and statutes, which includes at a minimum, the Web Content Accessibility Guidelines ("WCAG") 2.0 AA, published by the Web Accessibility Initiative of the World Wide Web Consortium ("W3C"). In achieving such conformance and usability by individuals with disabilities, Defendants may rely upon the User Agent Accessibility Guidelines ("UAAG") 1.0, the Authoring Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.0 to Non-Web Information and Communications Technologies ("WCAG2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated in Count Six;

9.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiffs; and

10.  That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 20th Day of October, 2017.

/s/ _____

**BRADLEY D. MCADORY**
**BPR # MS-10545**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
BDM@ADA-Firm.com
*Attorney for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 20ᵗʰ day of October, 2017 to the following:

**BEAU RIVAGE RESORTS, LLC**
attn.: Registered Agent
875 Beach Blvd.,
Biloxi, Mississippi 39530

**MGM RESORTS INTERNATIONAL**
c/o Corporation Service Company
attn.: Registered Agent
5760 I-55 North, Suite 150
Jackson, Mississippi 39211

/s/ _____
        **BRADLEY D. MCADORY**
        **BPR # MS-10545**
        ADA Group LLC
        4001 Carmichael Road, Suite 570
        Montgomery, Alabama 36106
        334.819.4030 p
        334.521.3859 f
        BDM@ADA-Firm.com
        *Attorney for the Plaintiffs*